**FEDERAL SAVINGS AND LOAN INSURANCE CORPORATION, in its corporate capacity and as Receiver for Unity Savings Association, Plaintiff,**

v.

**Howard BASS, Mitchell Bass, Rowland Frazier, Howard Harris, Anthony Grassi, Intercounty Title Company of Illinois and Central National Bank of Chicago, Defendants.**

No. 82 C 1293.

United States District Court, N.D. Illinois, E.D.

Oct. 31, 1983.

John L. Rogers, III, Hopkins & Sutter, Chicago, Ill., for plaintiff.

Craig Ehrlich, Braun & Rivkin, Allan E. Lapidus, Vedder, Price, Kaufman & Kammholz, Shayle P. Fox, Jeffrey A. Colby, Fox & Grove, Chtd., James M. DeZelar, Edward S. Salomon, Robbins, Coe, Rubinstein & Safran, Ltd., Chicago, Ill., for defendants.

Robert Handelsman and Jeffrey D. Cohen, Chicago, Ill., for Intercounty Title Co. of Illinois.

## MEMORANDUM OPINION
## AND ORDER

### WILLIAM T. HART, District Judge.

This action, currently before the Court upon the cross motions of all remaining parties for summary judgment, arises out of the failure of Unity Savings Association ("Unity"). The Federal Savings & Loan Insurance Corporation ("FSLIC") brought its one count complaint against Howard Bass and Mitchell Bass (the "Basses"), former officer-directors of Unity; Howard Harris, Anthony Grassi and Rowland Frazier, former Unity Officers; Intercounty Title Company of Illinois ("Intercounty"), escrow agent for the funds in issue; and Central National Bank in Chicago, the depository holding the escrowed funds at the time the complaint was filed. The FSLIC subsequently dismissed Harris, Grassi and Frazier as parties to this action.

In its complaint, the FSLIC attacks the validity of employment agreements between Unity and the individual defendants. Under those agreements, the individual defendants were to receive substantial "termination payments" in the event that: (i) the officer became disabled; (ii) the officer died; (iii) the officer was terminated without cause by Unity's board of directors; (iv) the officer voluntarily resigned pursuant to a request (but not ordered) by a state or federal financial regulatory institution; (v) Unity entered receivership; (vi) merger, consolidation, reorganization, liquidation or dissolution of Unity. The FSLIC contends that these agreements constitute a breach of the fiduciary duties imposed upon an officer and director of a savings and loan association by common law and state statute, Ill.Rev.Stat. ch. 17, § 3079, since they were entered into at a time when Unity was in a precarious and deteriorating financial position. The FSLIC also contends that these agreements are "unsafe and unsound practices" violative of federal law. 12 C.F.R. § 563.39.

When Unity entered into these agreements on October 31, 1971, it was undoubtedly in the midst of great turmoil. After over twenty years of profitable operations and substantial growth, Unity began to post successive monthly losses. The losses began in October, 1980 and quickly worsened to the point that after June, 1981, Unity was losing money at a rate of over $2 million per month. Those losses rapidly depleted Unity's nearly $30 million net worth (as of October, 1980). They continued until February 20, 1982, when the Illinois Commissioner of Savings & Loan Associations took custody of Unity, then insolvent, and closed its operations.

During this same period, the Basses labored to staunch the flow of red ink at Unity and sought new infusions of capital and potential merger partners for Unity, to rebuild its net worth. Four of Unity's vice-presidents, however, abandoned their involvement in Unity, resigning their positions in June and August of 1981. The stated purpose of the employment contracts at issue was to respond to this series of resignations.

At the September 23rd meeting of Unity's board of directors, the Basses recommended employment contracts for Frazier and Grassi. The minutes reflect that employment contracts for the Basses were also proposed, and were to be reviewed by the outside directors. As noted, a key feature of those contracts was a provision for incentive payments on the happening of the enumerated events.

At the October 21st board meeting, Howard Bass recommended approval and execution of employment contracts for the Basses, Frazier, Harris and Grassi. Louis Spear and James Flannery, both independent directors, moved and seconded the resolution for approval. The minutes state that the resolution "was unanimously adopted." On October 31, 1981, all five contracts were executed. At its meeting of November 6th, Howard Bass "reported" this execution to the Unity board. The Unity board then ratified those contracts. In accordance with these agreements, Unity deposited the sum of $330,000 into a

special escrow account, for which Inter-county was to act as escrow agent.[1]

### Intercounty's Motion for Summary Judgment

Intercounty involved itself in this litigation by filing an interpleader action, pursuant to Fed.R.Civ.P. 22. However, Intercounty's role as stakeholder is at an end, since it has deposited the funds here at issue with the Court. *See Walker v. Pritzker,* 705 F.2d 942, 944 (7th Cir.1983). The Basses, recognizing that the deposit of funds has mooted their crossclaim against Intercounty, have amended that crossclaim. Their original claim sought only the return of the escrowed funds. Their amended claim seeks damages for failure to turn over the escrowed funds in accordance with the escrow agreement. The damages alleged are the costs of defending this action.

However, the FSLIC would have brought this action against the Basses regardless of whether Intercounty or the Basses were in possession of the escrowed funds. It is the employment contract that created the escrow fund, not the fund itself, that the FSLIC attacks in this action. Therefore, the Basses have suffered no damages as a result of Intercounty's actions. To the contrary, Intercounty, not the Basses, is the party that has been forced to incur legal expenses as a result of the dispute between the FSLIC and the Basses. *See Clarkson Co., Ltd. v. Shaheen,* 533 F.Supp. 905 (S.D. N.Y.1982).

Further, Intercounty did not breach the escrow agreement. Intercounty was contractually obligated to pay out those funds only if Unity had not objected to the Basses' demand within ten days after receiving notice of the demand. Intercounty received the Basses' demand for escrowed funds on February 22, 1982. On February 20, 1982, the Illinois Commissioner of Savings & Loan Associations took custody of and closed Unity. On the same day the FSLIC was appointed receiver for Unity. This action was filed by the FSLIC on March 2, 1982, and Intercounty filed its appearance in this action that same day. All parties appeared before Judge Getzendanner on March 3, 1982, when she entered a temporary restraining order enjoining Intercounty from paying out the funds to the Basses. These events, all of which occurred within the ten day contractual holding period, relieved Intercounty of any contractual duty to pay out funds. The Court finds that Intercounty has not breached its fiduciary duties owed to the Basses.

In light of the absence of any breach of duty by Intercounty or any damage to the Basses, the Basses' amended crossclaim against Intercounty can only be characterized as frivolous. Therefore, Intercounty's motion for summary judgment on those crossclaims is granted.[2]

Since Intercounty has deposited with the Court all funds at issue, its motion for summary judgment on its claims for interpleader is granted, and it is discharged from further liability for or in connection with escrow accounts CE5027 and CE5028. The FSLIC's claims against Intercounty are dismissed.

### FSLIC's Motion for Summary Judgment

In support of its motion for summary judgment, the FSLIC argues that the courts must accord proper deference to agency interpretations of the statutes and regulations which they enforce. *See, e.g., Belenke v. SEC,* 606 F.2d 193, 199 (7th Cir.1979) ("[W]here an agency is required to make predictive, policy oriented determinations ... judicial deference to the expertise of the agency is particularly appropriate"). The regulation here at issue prohibits employment agreements for officers of savings institutions, such as Unity, where those agreements would constitute an "unsafe or unsound practice."[3] The Court

---

1. The amount in controversy has been reduced to $200,000 by virtue of settlements between the FSLIC and Harris, Grassi and Frazier.

2. Intercounty acknowledges that summary judgment in its favor on these crossclaims moots its request for injunctive relief against the Basses.

3. Section 563.39(a) states:

agrees that, in this case, judicial deference to the bank regulators is "particularly appropriate." The FSLIC's view that these employment agreements violate the regulations, is reasonable and the Court accepts that view.

■ The Basses contend that the agreements had no reasonably direct effect on Unity and that the FSLIC cannot overrule the considered business judgment of Unity's independent directors. Neither contention has merit.

The Fifth Circuit has stated that "the breadth of the 'unsafe or unsound practice' formula is restricted by its limitation to practices with a reasonably direct effect on an association's financial soundness." *Gulf Federal S & L v. FHLBB*, 651 F.2d 259, 264 (5th Cir.1981). But the agreement here in question is well within that limitation. When these employment agreements were executed, Unity's net worth was below $10 million and declining rapidly. It was a time when Unity could ill afford to part with $200,000 for even the best of reasons, much less for the reason stated. Since Unity's financial position was precarious, the removal of $200,000 from its general assets to secure Unity's ability to pay its officers a $200,000 bonus, had a direct effect on Unity's financial soundness. That other forces as well were dragging Unity into insolvency does not diminish the effect of the escrow payment. Therefore, these agreements "could lead to material financial loss or damage to the institution" under section 563.39(a).

Neither does the "business judgment" rule afford the Basses any protection. Section 563.39(a) of the regulations supplants the directors' business judgment on the

narrow point of officer's employment agreements. The regulation defines a new, outward boundary for permissible agreements, those neither "unsafe" nor "unsound." It is one of many regulations in Part 563 of Title 12 that curtails the directors' discretion as to proper methods of operating a savings institution.

Further, these employment agreements are suspect even as a matter of business judgment. The Basses were committed to the effort to save Unity by virtue of the fact that Unity's net worth was largely the Basses' net worth. Unity was a wholly owned subsidiary of Bass Financial Corporation, in which the Basses held a controlling interest. No further incentive was required to urge the Basses to do their utmost to salvage Unity. The additional $200,000 bonus provided in these agreements fails to satisfy even the "rational basis" test of the business judgment rule. *See Panter v. Marshall Field & Co.*, 646 F.2d 271, 293 (7th Cir.1981). No rational director would believe that the Basses would abandon their efforts to save their investment in Unity unless an employment contract with a "termination bonus" was offered.

These agreements are simply a blatant attempt to secure the Basses' position at Unity's expense. They were entered into when Unity's only hope of avoiding insolvency was to either refinance or to merge with another savings institution. Yet the agreements provide the Basses with the same "bonus" upon merger or refinancing (Contract ¶ 12), as is provided upon insolvency. In other words, the Basses would receive their "bonus" whether or not they succeeded in saving Unity. Therefore the

(a) General. An insured institution may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section. All employment contracts shall be in writing and shall be approved by an institution's board of directors. An institution shall not enter into an employment contract with any of its officers or other employees if such contract would constitute an unsafe or unsound practice. The making of such an employment contract would be an unsafe or unsound prac-

tice if such contract could lead to material financial loss or damage to the institution or could interfere materially with the exercise by the members of its board of directors of their duty or discretion provided by law, charter, bylaw or regulation as to the employment or termination of employment of an officer or employee of the institution. This may occur, depending upon the circumstances of the case, where an employment contract provides for an excessive term.

agreements cannot be construed as an incentive to save Unity. "[N]o reasonable business man could find that consideration has been supplied for the payment." ' *Cohen v. Ayers*, 596 F.2d 733, 739 (7th Cir. 1979).

However, even if the Court accorded no deference to the FSLIC's interpretation, it would find that these agreements were an "unsafe or unsound practice," violative of 12 C.F.R. § 563.39(a). They provide a "bonus" that was to be received whether Unity prospered or failed. The agreements pledge excessive amounts when Unity had no resources to expend. Further, as the FSLIC points out, they impose a $200,000 obstacle to all available regulatory solutions to Unity's financial woes. While the Court does not reach the FSLIC's claim that the agreements violate Illinois banking laws, Ill.Rev.Stat. ch. 17, § 3079, the procedure by which they were approved is suspect.[4] All these considerations mandate a finding that the Basses' employment contracts constitute an "unsafe or unsound practice" violative of section 563.39(a). Therefore, the agreements are null and void.

IT IS THEREFORE ORDERED

(1) The motion for summary judgment by Intercounty is granted and it is discharged from liability for or in connection with escrow accounts CE5027 and CE5028.

(2) FSLIC's claims against Intercounty are dismissed.

(3) FSLIC's motion for summary judgment is granted. However, the return of money deposited by Intercounty into the court's registry to the FSLIC is stayed for thirty (30) days or indefinitely upon the timely filing of a notice of appeal.

(4) The motions for summary judgment of the Basses are denied.[5]

---

4. While the board's minutes are arguably ambiguous regarding whether the Basses abstained from voting on the agreements, the minutes clearly reflect the Basses recommendation of the contracts at the November 11 meeting as well as their substantial participation at the prior meeting.

5. The Basses also have sought recovery of costs and attorneys' fees under an indemnification resolution adopted by Unity's board on December 16, 1981. As the FSLIC points out, terms of that resolution *do not require* indemnification but only *permit* indemnification in this case. The FSLIC, acting as receiver, has refused to exercise that power to indemnify. The resolution requires indemnification only as to directors and officers who are successful on the merits of an action.

The Basses also seek recovery of severance benefits based upon an alleged severance policy of long standing at Unity. Any such policy would have excluded "for cause" terminations, such as those involved here. The Basses were dismissed properly by the FSLIC's successor, Talman Home Federal Savings and Loan Association, on March 2, 1982, after discovery of the Basses' efforts to claim the disputed fund.