**Hillel ARONSON, Plaintiff–Appellant,**

v.

**RESOLUTION TRUST CORPORATION,**
**Defendant–Appellee.**

No. 93–56179.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 5, 1994.*

Decided Oct. 26, 1994.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Martin E. Jacobs, Los Angeles, CA, for plaintiff-appellant.

Craig M. Fields, Fields & Jaffe, Los Angeles, CA, for defendant-appellee.

Before: D.W. NELSON and NOONAN, Circuit Judges, and KING,** District Judge.

** The Honorable Samuel P. King, United States District Court Judge for the District of Hawaii, sitting by designation.

D.W. NELSON, Circuit Judge:

This is an appeal brought by Plaintiff–Appellant Hillel Aronson ("Aronson") to recover $1.5 million in pension benefits he alleges are owed him by the Resolution Trust Corporation ("RTC"), as receiver for Columbia Savings and Loan Association ("Columbia"), a federally insured savings association. After the RTC denied Aronson's claim for payment of the alleged benefits, he brought the present action in federal court. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Aronson was hired by Columbia as Senior Vice President—Tax and Financial Planning, on May 24, 1985. Aronson contends that he entered into an oral agreement with Thomas Spiegel, chief executive officer of Columbia, whereby Columbia agreed to pay Aronson a salary of $175,000 per year and retirement benefits of $100,000 per year for a period of 15 years, the latter to commence when Aronson reached the age of 65. Aronson further claims that his rights vested subject to a condition subsequent at the time the agreement was made. The agreement between Aronson and Columbia was never reduced to writing, although Aronson claims he made unavailing attempts to accomplish this end.

Aronson began working for Columbia on July 1, 1985 and remained there until he was discharged on June 1, 1989. On March 22, 1991 Columbia became insolvent and went into receivership. The RTC was subsequently appointed receiver for Columbia. After the RTC took over Columbia, Aronson filed a claim with the RTC to recover the $1.5 million he claims was owed him by Columbia pursuant to their oral agreement. When Aronson filed his claim with the RTC he was not yet 65 years old. Neither the RTC as receiver of Columbia, nor Columbia has paid Aronson these monies.

Aronson's original complaint was dismissed by the district court pursuant to Fed. R.Civ.P. 12(b)(6). The district court based its decision upon the common law doctrine which has evolved from *D'Oench, Duhme & Co. v. F.D.I.C.*, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942) partially codified at 12 U.S.C. § 1823(e), and on the failure of the oral employment contract to comply with the statute of frauds. Aronson timely appeals.

## STANDARD OF REVIEW

■ We review the district court's dismissal of the complaint *de novo,* and may affirm the decision of the district court "on any ground finding support in the record." *Oscar v. University Students Co-op. Ass'n,* 965 F.2d 783, 785 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 655, 121 L.Ed.2d 581 (1992).

## DISCUSSION

■ 12 C.F.R. § 563.39 (1994) ("Employment contracts") promulgates certain requirements for federally insured savings associations to enter into contracts with its officers. Section 563.39(a) provides in relevant part: that "[a]ll employment contracts shall be in writing and shall be approved specifically by an association's board of directors." *Id.* Although no federal court has yet relied on these requirements to declare an employment contract unenforceable, the clear and unequivocal language of 12 C.F.R. § 563.39(a) is dispositive in the instant case. *Cf. Piekarski v. Home Owners Sav. Bank, F.S.B.,* 956 F.2d 1484 (8th Cir.1992) (holding that appellant's failure to raise a preemption argument based on § 563.39(a) until post-trial motions constitutes waiver of the defense), *cert. denied,* —— U.S. ——, 113 S.Ct. 206, 121 L.Ed.2d 147 (1992); *Federal Sav. and Loan Ins. Corp. v. Bass,* 576 F.Supp. 848 (1983) (holding that employment agreements providing for payment of officers' bonuses whether the association prospered or failed, constituted an "unsafe or unsound practice" within the meaning of § 563.39(a)). Aron-

son's oral contract with Columbia was neither in writing nor approved by Columbia's board of directors, and thus did not meet the requirements of § 563.39(a). Pursuant to the express language of 12 C.F.R. § 563.39(a), Aronson's oral agreement is not enforceable.

▮ Moreover, even if Aronson could circumvent the requirements of § 563.39(a), his claim would be barred by § 563.39(b). Section 563.39(b) provides in pertinent part: "If the savings association is in default ... all obligations under the contract shall terminate as of the date of default, but this paragraph shall not affect any vested rights of the contracting parties ..." *Id.* at § 563.39(b)(4); *see also Modzelewski v. RTC,* 14 F.3d 1374, 1377 (9th Cir.1994). Although Aronson contends that the pension benefits allegedly promised in the oral agreement vested at the time he commenced employment, (he submitted a copy of a recent letter from his former superior at Columbia confirming their understanding that the pension benefits vested immediately), this court recently has made clear that, for purposes of 12 C.F.R. § 563.39(b), "a right is vested when the employee holding the right is entitled to claim *immediate payment." Modzelewski,* 14 F.3d at 1378 (emphasis added). *Modzelewski* involved the claims of Ernest Modzelewski and Gene Rice, two former officers of MeraBank Savings and Loan ("MeraBank") who brought suit against the RTC, as receiver for MeraBank, to recover funds they alleged were owed pursuant to their salary continuation agreements. Rice claimed he was entitled to compensatory damages stemming from the RTC's repudiation of his salary continuation agreement with MeraBank, and we agreed. Our holding was based on the fact that Rice was already entitled to immediate payment under his salary continuation agreement prior to the time the RTC took over MeraBank. Rice's agreement entitled him to receive payment if he retired or died after the age of 57. When the RTC took over MeraBank, Rice was 59 years old. Once Rice reached the age of 57 his retirement became unconditional. There were no other conditions precedent which Rice had to fulfill in order to receive payments under the salary continuation agreement. As the *Modzelewski* court noted, Rice "could have claimed his full benefits by taking retirement [or] had he died, his estate would have been entitled to the payments." *Modzelewski,* 14 F.3d at 1377.

The circumstances of Ernest Modzelewski were considerably different. Although, the terms of Ernest Modzelewski's salary continuation agreement were akin to the terms of Rice's agreement for the most part, Modzelewski's agreement entitled him to payment of benefits when he reached the age of 65, and Modzelewski was only 53 years old when the RTC took over MeraBank. Because Modzelewski had not reached the stipulated retirement age at the time the RTC took over MeraBank, he was not entitled to "immediate payment" of his benefits at that time. On this basis, we held that Modzelewski's rights had not vested before the RTC took over MeraBank, and the RTC had properly refused payment.

Aronson's situation is analogous to that of Ernest Modzelewski. As Aronson concedes, the alleged oral agreement promised retirement payments "commencing at age 65," and he was not yet 65 when the RTC took control of Columbia. Regardless of his understanding or that of his supervisor at Columbia when the alleged agreement was made, Aronson was not entitled to "immediate payment" at the time the RTC became receiver for Columbia. Thus, as a matter of law, his rights to such payments did not vest within the meaning of 12 C.F.R. § 563.39(b), and the RTC properly denied Aronson's claim to recover retirement benefits.

Aronson claims that it would be "highly unjust" for this court to apply § 563.39 retroactively in this case. He argues that 12 C.F.R. § 563.39 was not applicable to his employment agreement at the time he entered into it. Aronson's retroactivity argument is specious. The applicable provisions of 12 C.F.R. § 563.39 were effective as of April 23, 1982, some three years before Aronson entered into the employment contract

with Columbia. *See* 47 Fed.Reg. 17472 (1982).

■ Aronson further urges this court to limit itself to the defenses proffered by the RTC, or, to the grounds relied on by the district court. Our authority to consider the applicability of § 563.39 is not so limited. *See Oscar,* 965 F.2d at 785. As indicated above, we may uphold a dismissal by the district court under Fed.R.Civ.P. 12(b)(6) on any ground supported by the record. *Id.* We need not reach the basis for dismissal on which the district court relied. Although it is true that the district court did not rely on § 563.39, Aronson has argued all along that his pension benefits vested at the time he commenced his employment at Columbia, and the applicability of § 563.39 was briefed by both parties on appeal. Finally, we emphasize that even if we were to determine that the RTC waived the issue by failing to rely on it in the district court, a matter which we do not decide, we would exercise our discretion to address the issue given the clear dictates of the law in this area. *See United States v. Carlson,* 900 F.2d 1346, 1349 (9th Cir.1990) (noting that an issue raised for the first time on appeal can be considered where "the issue presented is purely one of law and the opposing party will suffer no prejudice").

### CONCLUSION

Accordingly, even taking all allegations of material fact in Aronson's complaint as true, we conclude that the alleged oral agreement between Columbia and Aronson was properly terminated by the RTC pursuant to its powers under 12 C.F.R. § 563.39. The decision of the district court therefore is

AFFIRMED.