**Ernest M. FLEISCHER, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, Defendant.**

**John A. SCOWCROFT, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION, Defendant.**

Civ. A. Nos. 92–4018–DES, 92–4019–DES.

United States District Court, D. Kansas.

April 12, 1995.

Nicholas L. DiVita, Matthew V. Bartle, Carol B. Clark, Lisa J. Henoch, Bryan Cave, Robert M. Thompson, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for plaintiffs Ernest M. Fleischer, John A. Scowcroft.

Cynthia C. Dunham, Emily Jane Bailey, Steven M. Leigh, Robert M. Leigh, Martin, Leigh & Laws, Kansas City, MO, Kimberly S. Hughes, Law Office of John P. Ryan, Jr., Grandview, MO, Cynthia Clark Campbell, The Campbell Law Firm, Kansas City, MO, Susan Ellmaker, Overland Park, KS, J. Mark Baird, James F. Duncan, Robert B. Best, Jr., Watson & Marshall, L.C., Kansas City, MO, for defendant Resolution Trust Corp.

Kimberly S. Hughes, Grandview, MO, Cynthia Clark Campbell, The Campbell Law Firm, Kansas City, MO, Susan Ellmaker, Overland Park, KS, J. Mark Baird, James F. Duncan, Robert B. Best, Jr., Watson & Marshall, L.C., Kansas City, MO, for defendant Franklin Sav. Ass'n.

## MEMORANDUM AND ORDER

SAFFELS, Senior District Judge.

### I. INTRODUCTION

This matter is before the court on the Resolution Trust Corporation's ("RTC") Renewed Motion for Summary Judgment (Doc. 235). The RTC initially filed a motion for partial summary judgment November 30, 1993, in which it argued plaintiffs' post-conservatorship compensation and severance pay claims must fail because plaintiffs were terminated by operation of 12 C.F.R. § 563.39. On March 31, 1995, the court issued a Memorandum and Order denying the RTC's motion. The court acknowledged the merit of the RTC's argument but denied summary judgment because the record lacked certain threshold facts. After the court issued the March 31, Memorandum and Order, the parties apparently concluded that

the threshold facts are beyond reasonable dispute. The parties agreed the most efficient way to resolve the remaining post-conservatorship and severance issues would be to request leave to renew the RTC's motion as supplemented with the missing facts. They communicated their position to the court April 5, 1995. Jury trial is set for April 17, 1995.

The court has considered the matter and is persuaded the parties' proposal presents the most efficient vehicle for resolving the remaining issues related to plaintiffs' post-conservatorship compensation and severance pay claims. Accordingly, because the court finds that granting the RTC leave to file a renewed motion best secures "the just, speedy, and inexpensive determination" of this claim,[1] and because plaintiffs do not oppose renewal, the court grants leave to file the renewed motion.

## II. *SUMMARY JUDGMENT STANDARDS*

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The substantive law identifies which issues are material. *Id.* at 248, 106 S.Ct. at 2510. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos National Laboratory*, 992 F.2d 1033, 1036 (10th Cir.1993).

The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the [nonmovant's] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The movant need not negate the nonmovant's claim. *Id.* at 323, 106 S.Ct. at 2552–53.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Industrial Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or the depositions, answers to the interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553 (interpreting Rule 56(e)). Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322, 106 S.Ct. at 2552. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323, 106 S.Ct. at 2552.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250, 106 S.Ct. at 2511.

---

1. Federal Rule of Civil Procedure 1 provides that "[the rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action."

## III. FACTUAL BACKGROUND

For the purposes of the RTC's renewed motion for summary judgment, the following supplemental facts are either uncontroverted or construed in the light most favorable to plaintiffs.

Article IV, Section 4.1(a) of Franklin Savings Association's ("FSA") bylaws provides that "[t]he officers of the Association shall be the Chairman of the Board, [and] a Vice Chairman of the Board...." Prior to February 15, 1990, Ernest M. Fleischer was Chairman of the Board of Directors and John A. Scowcroft was Vice Chairman. Neither Fleischer nor Scowcroft had written employment contracts with FSA.

On February 15, 1990, the Director of the Office of Thrift Supervision ("OTS") appointed the RTC as Conservator for FSA. John L. Carr then entered an agreement with the RTC to become the Managing Agent of FSA. He knew Fleischer and Scowcroft were, respectively, the Chairman and Vice Chairman of FSA's Board of Directors. Neither Carr nor the RTC ever expressly determined that the continuation of Fleischer and Scowcroft's employment was necessary for FSA's continued operation.

## IV. DISCUSSION

Plaintiffs bring this action alleging the RTC breached their employment agreements with FSA. The instant Memorandum and Order addresses only plaintiffs' post-conservatorship compensation and severance pay claims. These claims are, respectively, as follows: (1) plaintiffs seek unpaid salary from the date the conservatorship was imposed to the date their contracts were terminated; and (2) plaintiffs seek severance pay due to their termination pursuant to FSA's post-conservatorship policy. The RTC moves for summary judgment arguing as follows: (1) plaintiffs employment agreements are unenforceable; (2) even if their agreements are enforceable, plaintiffs are not entitled to post-conservatorship compensation because they were terminated by operation of 12 C.F.R. § 563.39(b)(5)(ii) on the date the conservatorship was imposed; and (3) even if their agreements are enforceable, plaintiffs are not entitled to severance pay because they were terminated by operation of law and not laid off due to a reduction in the work force.

### A. Plaintiffs' Agreements

■ Subchapter D, Chapter V, of Title 12 of the Code of Federal Regulations sets forth regulations applicable to all savings associations. Part 563 of Subchapter D sets forth regulations governing the "operations" of savings associations. Section 563.39 prescribes the manner in which savings associations may enter into employment contracts with their officers and employees. In pertinent part, § 563.39 provides as follows:

#### § 563.39 Employment Contracts

(a) *General. A savings association may enter into an employment contract with its officers and other employees **only** in accordance with the requirements of this section. All employment contracts **shall be in writing** and shall be approved specifically by an association's board of directors.*

(Emphasis added).

In *Aronson v. Resolution Trust Corp.*, 38 F.3d 1110 (9th Cir.1994), a former Vice President of a federally insured savings association sued to recover retirement benefits. There was no agreement in writing. The district court dismissed the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Ninth Circuit affirmed holding that the plaintiff's oral agreement was unenforceable because it was neither in writing nor approved by the association's board of directors as required by § 563.39(b). *Aronson*, 38 F.3d at 1112–13. The panel acknowledged that no other federal court had yet relied on § 563.39(a) to declare an agreement unenforceable; nevertheless, it held that "the clear and unequivocal language of 12 C.F.R. § 563.39(a) is dispositive...." *Id.* at 1112.

In the instant case, plaintiffs admit they did not have written contracts with FSA. *See* Plaintiffs' Memorandum in Response to Renewed Motion, p. 2; Defendant's Memorandum in Support of Renewed Motion, p. 5 and Ex. 1 & 2. Plaintiffs also acknowledge the bylaws state they were officers. As officers, § 563.39 applies to the form and con-

tent of their employment agreements. Section 563.39(a) provides that all employment contracts "shall" be in writing. As in *Aronson,* the clear and unequivocal language of 12 C.F.R. § 563.39(a) is dispositive here. Because plaintiffs were officers,[2] and because their agreements were not in writing, their agreements are unenforceable. *See Aronson,* 38 F.3d at 1112–13.

### B. *Plaintiffs' Compensation Claim: Unpaid Salary*

■ Even assuming *Aronson* is inapplicable and plaintiffs' agreements are enforceable, their unpaid salary claim still must fail. Section 563.39 grants savings associations the authority to enter into employment contracts with certain personnel; it also restricts that authority by requiring that each contract contain certain provisions. In pertinent part, § 563.39 provides as follows:

### § 563.39 Employment Contracts

(a) *General.* A savings association may enter into an employment contract with its officers and other employees only in accordance with the requirements of this section.

. . . . .

(b) *Required provisions.* Each employment contract shall provide that:

. . . . .

(5) All obligations under the contract shall be terminated, except to the extent determined that continuation of the con-

tract is necessary of [sic] the continued operation of the association

. . . . .

(ii) By the Director [of the OTS] or his or her designee, . . . when the association is determined by the Director to be in an unsafe or unsound condition.

Any rights of the parties that have already vested, however, shall not be affected by such action.

On February 15, 1990, the Director of the OTs determined FSA was in an unsafe and unsound condition. The RTC contends neither the Director nor his designee determined that plaintiffs' continued employment was necessary for FSA's continued operation. The RTC concludes, therefore, that plaintiffs have no claim for post-conservatorship compensation because their contracts terminated February 15, 1990, the date the Director determined FSA to be "unsafe and unsound."

Section 563.39 applies to the instant case; therefore, all obligations under plaintiffs' contracts terminated February 15, 1990, the date the Director determined FSA to be "unsafe and unsound," except to the extent the Director or his designee determined continuation of plaintiffs' contracts was necessary for the continued operation of FSA. Plaintiffs' post-conservatorship compensation claim turns on whether the Director or his designee determined plaintiffs' continued employment was necessary. Plaintiffs do not specifically contend the Director or his designee made the requisite determination; more importantly, plaintiffs do not raise a genuine

---

**2.** Section 563.39 authorizes a savings association to enter into employment contracts with its *"officers and other employees."* (Emphasis added). Part 561 of Title 12 of the Code of Federal Regulations defines the terms "director" and "officer." Section 561.18(a) defines "director" generally as "any director . . . or other person performing similar functions with respect to any organization whether incorporated or unincorporated." Section 561.35 defines "officer" specifically as follows:

the president, any vice-president (but not an assistant vice-president, second vice-president, or other vice president having authority similar to an assistant or second vice-president), the secretary, the treasurer, the comptroller, and any other person performing similar functions

with respect to any organization whether incorporated or unincorporated. The term *officer* also includes the chairman of the board of directors if the chairman is authorized by the charter or by-laws of the organization to participate in its operating management or if the chairman in fact participates in such management.

FSA's bylaws state that its officers shall include the Chairman and Vice Chairman of the Board. The court is aware of no principled reason to distinguish a vice chairman from a chairman for the purposes of § 561.35 and § 563.39. Therefore, the court finds that since FSA's Bylaws specifically state that the Chairman and Vice Chairman of the Board of Directors are officers, both Fleischer and Scow-

issue whether such a determination was made. Instead, plaintiffs seem to argue the pre-conservatorship directive issued by FSA's Board of Directors somehow insulates their contracts from the operation of § 563.39. They provide no authority in support of this argument. Section 563.39(a) authorizes an association's board of directors to make employment contracts. Section 563.39(b) limits the authority § 563.39(a) extends by requiring that every contract contain certain restrictions; such as, each contract must provide that it terminates upon the Director's determination that the association is "unsafe and unsound." According to plaintiffs' argument, an association's board of directors can avoid § 563.39(b) merely by passing a directive that a certain officer or employee's contract shall survive a determination that the association is "unsafe and unsound." Plaintiffs' argument contradicts the plain language of § 563.39 and renders subsection (b) meaningless. Their argument is without merit. Therefore, because plaintiffs produce no evidence sufficient to raise a genuine issue that the Director or his designee determined their continued employment was necessary for FSA's continued operation, the court finds their agreements terminated by operation of § 563.39(b)(5)(ii).

### C. *Plaintiffs' Severance Pay Claim*

■ Even assuming *Aronson* is inapplicable and plaintiffs' agreements are enforceable, their severance pay claim still must fail.[3] Plaintiffs claim they are entitled to severance pay under the terms of FSA's written post-conservatorship severance policy. The policy submitted to the court states that for an employee to be eligible for severance pay his termination must have been based upon a reduction of the work force; that is, he must have been terminated due to a layoff. Plaintiffs' employment contracts were terminated by operation of § 563.39(b)(5)(ii). Plaintiffs do not specifically contend they were laid off as the result of a reduction in the work force; more importantly, they produce no evidence sufficient to raise a genuine issue that they were laid off

as a result of reduction in the work force. Under the severance policy submitted to the court, plaintiffs do not qualify for severance pay because they were terminated by operation of law and not laid-off due to a reduction in the work force.

### V. *CONCLUSION*

**IT IS BY THE COURT THEREFORE ORDERED** that the RTC's Amended Motion for Partial Summary Judgment (Doc. 235) is granted. Accordingly, the RTC is granted summary judgment as to plaintiffs' post-conservatorship compensation and severance pay claims.

---

croft are "officers" within the meaning of § 561.35 and § 563.39.

**3.** Section 563.39(a) requires that an officer's contract be written and approved by the associa-

tion's board of directors. The court notes that although the severance policy is written, there has been no showing it was approved by FSA's Board of Directors.