14 F.3d 1374
 62 USLW 2471, 17 Employee Benefits Cas. 2298
 Ernest F. MODZELEWSKI, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, as Receiver for MeraBank, a
Federal Savings Bank, Defendant-Appellee.
Gene E. RICE, Plaintiff-Appellant,
v.
RESOLUTION TRUST CORPORATION, as Receiver for MeraBank, a
Federal Savings Bank, Defendant-Appellee.
 Nos. 92-15670, 92-15865.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Aug. 11, 1993.
Decided Jan. 20, 1994.
 
 Raymond M. Hunter, Hunter & Lehman, Phoenix, AZ, for plaintiff-appellant Modzelewski.
 Peter K. Rosen and Dennis A. Winston, Rosen & Winston, Los Angeles, CA, for plaintiff-appellant Rice.
 Bruce C. Taylor, RTC, Washington, DC, John H. Bernstein, Diana C. Fields, Kutak Rock, Denver, CO, and E. Scott Dosek, Kutak Rock, Phoenix, AZ, for the defendant-appellee.
 Appeals from the United States District Court for the District of Arizona.
 Before: KOZINSKI, THOMPSON and T.G. NELSON, Circuit Judges.
 KOZINSKI, Circuit Judge:
 
 
 1
 Starting in the 1970s, MeraBank Savings and Loan offered high level employees "salary continuation agreements," presumably to secure the most talented managers. Nonetheless, it went the way of many S & Ls this past decade. The Resolution Trust Corporation, as receiver, now refuses to honor the agreements, claiming that the right to payments terminated automatically pursuant to 12 C.F.R. Sec. 563.39(b)(5) when the RTC took over.
 
 I. Facts
 
 2
 Gene Rice devoted 35 years of service to MeraBank; Ernest Modzelewski gave 28. As executives, they signed agreements providing for 120 monthly installments after certain triggering events: retirement, death or termination without cause.
 
 
 3
 MeraBank was declared insolvent in January 1990; the RTC took over as receiver and promptly terminated both Rice and Modzelewski. Adding injury to insult, it refused to pay them anything under their salary continuation agreements. Rice and Modzelewski brought suit claiming they were entitled to compensatory damages under 12 U.S.C. Sec. 1821(e)(3) because the RTC had repudiated its obligation under the contract.
 
 
 4
 The district court granted summary judgment to the RTC and Rice and Modzelewski appeal. 785 F.Supp. 1385. Both sides claim attorney's fees.
 
 II. The Merits
 
 5
 The parties agree that the RTC was entitled to repudiate Rice and Modzelewski's salary continuation agreements once it took over MeraBank. The far-more-than-$64,000 question is whether it could do so without paying them compensation. The RTC argues it was entitled to walk away from the salary continuation agreements because they were merely employment contracts which don't survive receivership, except insofar as rights thereunder are "vested," 12 C.F.R. Sec. 563.39(b)(5).[1] Rice and Modzelewski argue that the salary continuation agreements are not employment contracts, but pension plans which arguably survive receivership pursuant to 12 C.F.R. Sec. 563.47. In any event, they argue their rights to receive benefits were vested.
 
 A. The Nature of the Agreements
 
 6
 "Employment contract" is not defined in the applicable regulations. Black's Law Dictionary 525 (6th ed. 1990) says it's an agreement setting forth "terms and conditions" of employment. The regulations do define "pension plan" by reference to ERISA. 12 C.F.R. Sec. 563.47(a). ERISA, in turn, points us to the terms of the plan itself to see whether it provides for "retirement income" or "deferral of income ... for a period extending to the termination of covered employment or beyond...."[2]
 
 
 7
 The parties draw different inferences from the terms of the salary continuation agreements. Rice and Modzelewski argue the agreements fit the definition of pension plan because they provide pay upon Rice's "termination" after age 57 and upon Modzelewski's "retirement" after age 65. The agreements also calculate benefits according to age and length of service--another hallmark of pension plans.
 
 
 8
 The RTC, for its part, points out that the agreements also contain terms and conditions of employment. In the "general agreement" under paragraph 1, the employee agrees to maintain no other employment without the employer's consent and to devote all his working time and ability to MeraBank; another paragraph establishes a covenant not to compete after retirement or termination as a condition of receiving benefits; a third authorizes MeraBank to discharge for cause and voids all benefits if that occurs. Based on these provisions, the RTC asserts this is not a retirement plan but an employment contract.
 
 
 9
 Both sides are right to some extent. Certain aspects of the salary continuation agreements plainly fall within ERISA's highly functional definition of a pension plan--a plan containing some provision for retirement or deferred income. 29 U.S.C. Sec. 1002(2)(A). We have interpreted this language broadly, holding that a pension plan is established if a reasonable person could " 'ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits'.... That is clearly a sufficient allegation of the establishment of a plan." Scott v. Gulf Oil Corp., 754 F.2d 1499, 1504 (9th Cir.1985) (quoting Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir.1982)); see also Williams v. Wright, 927 F.2d 1540, 1543-49 (11th Cir.1991) (letter promising "continuation ... of cash" after retirement to be paid from general assets of company in return for consultant services and continued loyalty constituted pension plan under ERISA definition). The relevant paragraphs of the salary continuation agreement here--calculating payments based on age and length of service, identifying the beneficiaries and setting out a schedule for payments--satisfy our Scott requirements.[3]
 
 
 10
 Nothing in ERISA's definition or the regulations, moreover, says that if pension plans also contain other terms--such as terms governing employment--they somehow cease to be pension plans. In fact, ERISA makes specific provision for certain terms of employment like non-competition clauses in pension plans. See 29 U.S.C. Sec. 1053(a)(3); Clark v. Lauren Young Tire Center Profit Sharing Trust, 816 F.2d 480 (9th Cir.1987).
 
 
 11
 At the same time, the agreements in question clearly contain terms related directly to employment, and hence are also employment contracts. Indeed, the salary continuation aspect of the agreements is merely one bundle of rights and obligations within a broader employment relationship. This is not at all unusual. Because ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a de facto pension plan, whether or not the parties intended to do so.
 
 
 12
 Since the agreements in question are both employment contracts and pension plans, we must consider whether, and to what extent, the RTC may abrogate them when it takes over the institution. Rice and Modzelewski argue that, insofar as what's at issue here is their right to a pension, the applicable regulation is 12 C.F.R. Sec. 563.47, which governs the administration of pension plans. This regulation, Rice and Modzelewski point out, has no provision giving the RTC a right to abrogate,[4] meaning that the RTC is powerless to cut off an employee's rights in a pension plan, even where that pension plan is part of an employment contract. The RTC, for its part, sees section 563.47 as inapposite. That section, the RTC argues, merely establishes housekeeping rules for the administration of pension plans set up by S & Ls; it has no bearing on whether an individual employee's right to collect under a particular plan is cut off pursuant to section 563.39(b)(4) or (b)(5).
 
 
 13
 The RTC has the better of the argument. An individual employee's right to participate in a pension plan is a term of his employment contract. Pensions and other deferred compensation arrangements are benefits of employment--not all that different from salaries and other fringe benefits. As such, they are subject to termination when the RTC takes over, except to the extent the right to receive them has become vested. 12 C.F.R. Sec. 563.39(b)(5); see also Fentron Indus. v. National Shopmen Pension Fund, 674 F.2d 1300, 1306 (9th Cir.1982) (under ERISA, nonvested pension rights are subject to alteration or abolition at any time). It's to the issue of vesting that we now turn.
 
 B. Vested Rights
 
 14
 i. Rice
 
 
 15
 Under Rice's agreement, if he retired or died after age 57, he would be entitled to payment under the salary continuation agreement. Rice was 59 when the RTC took over. At that point--indeed, any time after he had turned 57--Rice could have claimed his full benefits by taking retirement; had he died, his estate would have been entitled to the payments. There was nothing more he was required to do in order to earn the right to receive payments under the plan.[5]
 
 
 16
 Nonetheless, Rice chose to keep working. This means he could have been terminated for cause. And, had he been so terminated, he would have lost all benefits under the agreement. Thus, the RTC argues, Rice's right to collect under the agreements had not yet become unconditional at the time he was terminated and, therefore, was not vested.
 
 
 17
 The nub of the controversy, then, is whether the presence of this somewhat remote contingency kept Rice's rights from becoming vested as that term is used in section 563.39. Since vesting isn't defined in the regulation, we look to analogous federal law. Rice points us toward an IRS regulation which provides that property rights are "substantially vested" for tax purposes when they're "not subject to a substantial risk of forfeiture." 26 C.F.R. Sec. 1.83-3. This regulation specifies that termination for cause does not amount to a "substantial risk." Id.
 
 
 18
 The RTC, for its part, relies on ERISA's definition of "nonforfeitable" which requires the right to be "unconditional." See 29 U.S.C. Sec. 1002(19). Unfortunately for the RTC, neither it nor the few district court cases on which it relies[6] took account of the conditions that follow this "unconditional" language. See id. (citing 29 U.S.C. Sec. 1053(a)(3)); Hummell v. S.E. Rykoff & Co., 634 F.2d 446, 449 (9th Cir.1980).[7] Thus, even under the ERISA definition, nonforfeitable does not mean that the payments must be absolutely unconditional. The Supreme Court also has noted that vested pension rights may still be subject to certain conditions subsequent. See, e.g., Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 376-77 n. 25, 378, 100 S.Ct. 1723, 1734 n. 25, 1734 (1980).
 
 
 19
 We conclude that, in order to be vested as that term is used in 12 C.F.R. Sec. 563.39(b), rights need not be free of every contingency or possibility of divestiture. Rather, a right is vested when the employee holding the right is entitled to claim immediate payment. It's not material that the employee fails to make such a demand--exposing himself to the risk of divestiture--so long as the decision not to claim payment lies entirely within his control. Pursuant to this standard, Rice's rights under paragraph 2 of his agreement had vested because he had an unconditional right to retire and collect benefits under the salary continuation agreement when he reached age 57, two years before the RTC took over. Rice is therefore entitled to actual compensatory damages stemming from the RTC's repudiation of its obligation. 12 U.S.C. Sec. 1821(e)(3)(A).
 
 
 20
 ii. Modzelewski
 
 
 21
 The terms of Modzelewski's agreement are substantially the same as Rice's, but there is one significant difference: Modzelewski hadn't yet earned the right to claim benefits. He was entitled to benefits when he attained the age of 65; when the RTC took over, Modzelewski was only 53. His right to claim benefits was still subject to any number of substantial contingencies. For example, right before the RTC took over, Modzelewski would have forfeited all of his benefits had he quit MeraBank; had he died, his beneficiary would only have received 50% of his benefits; had MeraBank terminated him without cause, Modzelewski would have been entitled to only 10% of his benefits. The day before the RTC took over, Modzelewski simply could not have forced payment under the salary continuation agreement; he would have had to work at MeraBank for 12 more years before earning the right to receive benefits on demand. Modzelewski's rights therefore had not vested before the RTC took over MeraBank, and his salary continuation agreement terminated by operation of law before his rights could vest.
 
 
 22
 Modzelewski argues in the alternative that his rights vested at the moment the RTC took over. Another provision of his contract states that, upon a change in control of management, Modzelewski is entitled to full benefits as if he had reached retirement age. Thus, Modzelewski asserts that the RTC's takeover constituted such a change in control--vesting his rights even as they were voided. By the terms of the regulation, however, all the rights terminated upon the RTC's appointment except for "[a]ny rights ... that have already vested." 12 C.F.R. Sec. 563.39(b)(5) (emphasis added). For Modzelewski's argument to work, his right would have had to vest before the RTC took over. As we hold above, they had not.
 
 C. Attorney's Fees
 
 23
 All parties claim attorney's fees on appeal based on the attorney's fee provisions of the salary continuation agreements and Arizona law. See Ariz.Rev.Stat. Sec. 12-341.01.A (giving court discretion to award attorney's fees to successful party "[i]n any contested action arising out of a contract"). Since it was hardly a vested right, the attorney's fee provision in Rice and Modzelewski's agreements became null and void after the RTC's appointment; and, since we address federal, not state claims, the federal common law of attorney's fees, and not Arizona law, is the relevant authority. Under the American rule, generally applicable in federal litigation, each side shall pay its own attorney's fees. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 269-71, 95 S.Ct. 1612, 1627-29, 44 L.Ed.2d 141 (1975); United States v. Parsons Corp., 1 F.3d 944, 946-47 (9th Cir.1993). As the prevailing parties in the respective actions, Rice and the RTC are entitled to costs. Fed.R.App.P. 39(a).
 
 
 24
 AFFIRMED as to Modzelewski (No. 92-15670), REVERSED as to Rice (No. 92-15865).
 
 
 25
 DAVID R. THOMPSON, Circuit Judge, concurring in part and dissenting in part.
 
 
 26
 Although I concur in Parts I, IIA and IIBii of the majority opinion, I respectfully dissent from Part IIBi. In my view, Rice's rights under his employment contract had not vested when the RTC took over MeraBank Savings and Loan, and as a result the RTC had the power to terminate his employment contract without liability, including the provision for salary continuation.
 
 
 27
 Rice's right to salary continuation payments after termination of his employment was subject to a condition precedent: He had to retire after age 57 and before he was discharged for cause. That he chose to work beyond age 57 did not eliminate this contingency. So long as he chose to continue working and to receive the benefits of active employment he did so at the risk of discharge for cause prior to his voluntary retirement. His rights were not vested.
 
 
 28
 The majority gets rid of the vesting problem by erasing it from Rice's contract when he turned 57. Thereafter, according to the majority, it simply wasn't in the contract because from then on all Rice had to do was retire and he would be entitled to his salary continuation payments. Of course, that is not what the contract said. It said Rice could get his retirement payments after age 57 provided he retired before he was discharged for cause. Rice could have eliminated the contingency by retiring after age 57, but he didn't. Thus, when the RTC took over MeraBank it could terminate Rice's contract without liability for the non-vested salary continuation payments.
 
 
 29
 The majority's reliance upon ERISA is misplaced. Under ERISA "vested" and "nonforfeitable" are synonymous. Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 376-77, 100 S.Ct. 1723, 1733-34, 64 L.Ed.2d 354 (1980). ERISA defines nonforfeitable as "unconditional." 29 U.S.C. Sec. 1002(19). As the majority points out, this subsection also contains an exception to the general definition:
 
 
 30
 For purposes of this paragraph, a right to an accrued benefit derived from employer contributions shall not be treated as forfeitable merely because the plan contains a provision described in section 1053(a) of this title.
 
 
 31
 This language does not help Rice. Section 1053(a) sets forth very specific exceptions to the general requirement that a benefit must be unconditional to be vested. The condition in Rice's employment contract, that he retire before being discharged for cause, is not at all similar to any exceptions found in section 1053(a). Under the doctrine of expressio unius est exclusio alterius, the condition precedent in Rice's contract is not excepted from the general rule that benefits must be unconditional to be vested.
 
 
 32
 Nor is the majority's position buttressed by reference to tax law. The majority cites 26 C.F.R. Sec. 1.83-3 for the proposition that "termination for cause does not amount to a 'substantial risk' " which would prevent property from being "substantially vested." Section 1.83-3, however, applies only to section 83 of the Internal Revenue Code. Section 83 regulates the taxation of property transferred in connection with the performance of services. Thus, under section 83, if property has already been transferred, it is vested and taxable even if subject to the condition subsequent that the owner forfeits the property if he or she is subsequently terminated for cause. Property already transferred but subject to a condition subsequent differs substantially from a promised employee benefit that is subject to a condition precedent.
 
 
 33
 Moreover, the Treasury Regulations address the issue of tax liability, not the rights of employees to receive benefits. The policy concerns of fair and prompt taxation that may have motivated the IRS to label property vested (and therefore taxable) for revenue collection purposes do not apply in this case.
 
 
 34
 Nachman is of no help to the majority, because it is inapposite. There, the Court found that conditioning employee benefits on the solvency of a pension fund did not prevent the benefits from being vested. Nachman, 446 U.S. at 378, 100 S.Ct. at 1734. ERISA was enacted to address, in part, the problem of fund insolvency; the Nachman holding was necessary to bring most pension plans under the authority of ERISA. Id. at 378-79, 100 S.Ct. at 1734-35.
 
 
 35
 Here, Rice's benefits are subject to a condition precedent applicable specifically to him. By inserting this provision into Rice's contract, the parties did not attempt to make an end-run around ERISA; the provision is a reasonable precondition to Rice's receipt of salary continuation payments, namely, that he not be terminated for cause.
 
 
 36
 In interpreting the terms of a contract, we must follow the plain meaning of the words used. Trident Center v. Connecticut General Life Ins. Co., 847 F.2d 564, 569 (9th Cir.1988). Although the word "vested" does not appear expressly in Rice's contract, it is part of the contract nonetheless. 12 C.F.R. Sec. 563(b) (all employment contracts between a FSLIC insured institution and its employees must contain the provisions of 12 C.F.R. Sec. 563.39(b), which provides that "vested" rights may not be abrogated by the RTC). If an employment contract fails to contain this provision, it is read into the contract as an implied term. Rush v. Federal Deposit Ins. Corp., 747 F.Supp. 575, 577 (N.D.Cal.1990). Black's Law Dictionary defines vested as "fixed, settled, absolute. Having the character or given the rights of absolute ownership; not contingent; not subject to be defeated by a condition precedent." (emphasis added). Under the plain meaning of the word "vested", Rice's benefits, which were subject to a condition precedent, were not vested.
 
 
 37
 For the foregoing reasons, I would affirm the district court across the board and hold that neither Modzelewski's nor Rice's contract rights were vested when the RTC took over MeraBank Savings and Loan.
 
 
 
 [1]
 RTC also insinuates throughout its briefs that Rice and Modzelewski led MeraBank to its ruin and should therefore be denied their benefits. Obviously, many circumstances contributed to the S & L crisis, and we consider it inappropriate for counsel to cast aspersions without any support in the record. See United States v. Kojayan, 8 F.3d 1315, 1321 (9th Cir.1993)
 
 
 [2]
 The full definition of pension plan under ERISA is:
 any plan, fund, or program ... established or maintained by an employer ... to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program--
 (i) provides retirement income to employees, or
 (ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond, regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.
 29 U.S.C. Sec. 1002(2)(A).
 
 
 [3]
 To the extent the agreements here can be characterized as unfunded plans providing deferred compensation to a select group of management or highly compensated employees, see Affidavit of McQuistion, Modzelewski ER 63-64, they seem to fit within ERISA's provision for top hat pension plans. See 29 U.S.C. Sec. 1051(2)
 
 
 [4]
 The pension plan regulation does contain a "termination" provision that permits the plan's board of directors or successors to stop contributing to a pension plan with 60-days' notice to the District Director of the Office of Thrift Supervision. 12 C.F.R. Sec. 563.47(d)
 
 
 [5]
 The amount of payment would increase with every year of service beyond age 57 according to a formula in the agreement
 
 
 [6]
 See, e.g., Rush v. FDIC, 747 F.Supp. 575 (N.D.Cal.1990) (finding severance pay benefits nonvested because conditional); FSLIC v. Quinn, 711 F.Supp. 366 (N.D.Ohio 1989) (same), vacated on other grounds, 922 F.2d 1251 (6th Cir.1991)
 
 
 [7]
 For example, rights under a pension plan are deemed nonforfeitable even if the plan provides that the participant forfeits benefits if he dies, or that his benefits are suspended if he accepts employment with another employer. 29 U.S.C. Sec. 1053(a)(3)