Jack C. **FEIGEL,** an individual; T.C. Young, an individual; Terry Lingefelder, an individual; and Owen W. Strange, an individual, Plaintiffs,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for HomeFed Bank, F.S.B., Defendant.**

Civil No. 95–1934–BTM(AJB).

United States District Court,
S.D. California.

May 22, 1996.

William H. Lancaster, Rebecca M. O Malley, Andrews & Kurth, Los Angeles, CA, for plaintiffs.

Steven C. Morrison, Carl P. Luckadoo, Morrison & Lespier, Irvine, CA, for defendants.

MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

MOSKOWITZ, District Judge.

### INTRODUCTION

The parties have filed cross-motions for summary judgment. The plaintiffs, four former directors of Home Federal Savings & Loan Association, subsequently HomeFed Bank, F.S.B. ("HomeFed"), contend that they are entitled to retirement benefits pursuant to a Director's Retirement Plan instituted by HomeFed in 1987. On July 6, 1992

the RTC was appointed receiver for HomeFed. The FDIC has since replaced the RTC and asserts that the court does not have subject matter jurisdiction over plaintiffs' claims because the plaintiffs failed to properly exhaust their administrative remedies pursuant to the Financial Reform, Recovery and Enforcement Act of 1989, Pub.L. No. 101–73, 103 Stat. 548 (August 9, 1989) ("FIRREA"), 12 U.S.C. §§ 1821(d)(5)–(6). A hearing on the cross-motions for summary judgment was held on May 10, 1996.

### BACKGROUND

On November 24, 1987, HomeFed approved and adopted a Director's Retirement Plan (the "Plan") specifically covering current and future non-employee directors joining HomeFed's Board of Directors. (Complaint at ¶ 5). Each of the individual plaintiffs qualified for benefits under the Plan at the time of its 1987 adoption by virtue of having served three or more years on the board of directors. (*Id.* at ¶ 13). On August 22, 1991, HomeFed voted to suspend the Plan by deferring any unvested payments until HomeFed returned to capital compliance. (*Id.*) Prior to the suspension of the Plan only one of the individual plaintiffs, Jack C. Feigel ("Feigel") retired and began receiving Plan benefits. Feigel began receiving his benefits in March 1989. (Feigel Declaration at ¶ 7). Plaintiff Terry Lingerfelder ("Lingerfelder") retired in February 1992 and plaintiffs T.C. Young ("Young") and Owen W. Strange ("Strange"), retired in April 1992. HomeFed did not pay benefits to either Lingerfelder, Strange or Young upon their retirement. Other than payments made to Feigel, no monies were paid to any of the plaintiffs pursuant to the Plan. Feigel stopped receiving benefits in July 1992.

On July 6, 1992, the Office of Thrift Supervision ("OTS") appointed the RTC as receiver for HomeFed.[1] (Complaint at ¶ 5). Thereafter, the RTC, as receiver for HomeFed, repudiated the Plan pursuant to 12 U.S.C. § 1821(e) on the basis that it was

---

1. On or about December 11, 1995, the FDIC gave notice of its statutory succession to the RTC

as receiver for HomeFed effective December 31, 1995.

burdensome and that its repudiation and disaffirmance would promote the orderly administration of HomeFed. (*See* Complaint at ¶ 17(a), (b), (c) and (d)).

On July 10, 1992, August 10, 1992 and September 10, 1992, the RTC caused a "Notice to Creditors" of HomeFed to be published in the San Diego Union Tribune and Los Angeles Times. (Declaration of Clarke Adams ("Adams Decl.") at Exs. A and B). The Notice to Creditors stated that all claims by creditors against the assets of HomeFed needed to be filed on or before October 13, 1992. In addition to these published notices, the RTC mailed two separate notices to the plaintiffs prior to the October 13, 1992 claims bar date informing them of the need to file proofs of claims. (Adams Decl. at ¶ 6 and Exs. I, J, L and M). On September 16, 1992, the RTC also mailed a letter entitled "Potential Claimant" to the plaintiffs informing them of the date for filing claims. (*Id.* at ¶ 7 and Exs. N, O, P and Q).

The plaintiffs do not dispute that they received the required notice for filing claims pursuant to 12 U.S.C. § 1821(d)(3)(B). Plaintiffs Lingerfelder, Young and Strange each responded in interrogatories that they had learned of the appointment of a receiver for HomeFed on July 6, 1992. (Declaration of Carl P. Luckadoo ("Luckadoo Decl.") at Exs. F, G, H and I). Plaintiff Feigel learned of the appointment of a receiver on September 30, 1992. (*Id.* at Ex. E). More importantly, three of the plaintiffs, Young, Lingerfelder and Strange, actually filed claims against HomeFed with the RTC other than for benefits under the Plan on or before the October 13, 1992 notice date. (Adams Decl. at ¶ 4 and Exs. C, D, E, F, G and H).

Another HomeFed outside director, Terence P. Daly, who was also eligible for benefits under the Plan, filed a claim for benefits under the Plan prior to the October 13, 1992 deadline. This claim was litigated in the district court in *Daly v. RTC*, 94–0027–T (S.D.Cal.1994). In *Daly*, the court addressed the issue of whether the terms of the Plan had vested prior to repudiation by the RTC and whether Daly was entitled to recover his retirement benefits. District Judge Turrentine held that Daly was entitled to receive Plan benefits and that "since [Daly] was vested prior to suspension of the Plan, the August 21, 1991 suspension did not affect his right to demand payments...." (Complaint at Ex. B, Order Re: Motions For Summary Judgment, filed August 26, 1994 at 4). The court further held that Daly was entitled to all benefits other than attorney's fees. (*Id.*) The *Daly* decision did not address whether the plaintiff, Daly, was required to file a claim with the RTC prior to the October 13, 1992 date because Daly had in fact complied with FIRREA's exhaustion requirements and timely filed a claim.

The plaintiffs in this action filed claims for payment of retirement benefits under the Plan with the RTC on February 13, 1995, more than two years after the time for filing such claims. (Complaint at ¶ 20). The RTC did not respond to these claims and the complaint in this action was filed on September 8, 1995. The plaintiffs have sued to obtain declaratory relief that they are entitled to retirement payments under the Plan and that these rights cannot be abrogated, diminished or affected by the provisions of FIRREA, including its provisions for the submission and barring of claims. They have also alleged a claim for breach of the Plan based upon their claim that they have performed all conditions required and that the RTC, as receiver, is required under the Plan to pay HomeFed's obligations pursuant to 12 U.S.C. § 1821(d)(5), (6). The parties have each moved for summary judgment.

## DISCUSSION

### A. *Standard for Summary Judgment*

■ Summary Judgement is appropriate if the record, read in the light most favorable to the non-moving party demonstrates no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Material facts are those necessary to the proof or defense of a claim, and are determined by reference to the substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Any doubt as to the existence of any issue of material fact re-

quires denial of the motion. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■■■ "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510.

In this case, the parties have filed cross-motions for summary judgment. The defendants contend that this court does not have subject matter jurisdiction over the plaintiffs' claims because they failed to file the necessary proofs of claim with the RTC prior to the October 13, 1992 deadline. *See* 12 U.S.C. §§ 1821(d)(5)(C)(i) and (d)(13)(D). The plaintiffs assert that there is subject matter jurisdiction under either FIRREA or 28 U.S.C. § 1331 and there is no disputed issue of fact relating to any of the elements of their claims.

### B. *FIRREA*

Pursuant to FIRREA's notice requirements:

The receiver, in any case involving the liquidation or winding up of the affairs of a closed depository institution, shall—

(i) promptly publish a notice to the depository institution's creditors to present their claims, together with proof, to the receiver by a date specified in the notice which shall be not less than 90 days after the publication of such notice; and

(ii) republish such notice approximately 1 month and 2 months, respectively, after the publication under clause (i).

12 U.S.C. § 1821(d)(3)(B). In this case, the plaintiffs were provided with the required notice as set forth in the above provisions.

FIRREA further states that:

(i) In general

Except as provided in clause (ii), claims filed after the date specified in the notice published under paragraph (3)(B)(i) shall be disallowed and such disallowance shall be final.

(ii) Certain exceptions

Clause (i) shall not apply with respect to any claim filed by any claimant after the date specified in the notice published under paragraph (3)(B)(i) and such claim may be considered by the receiver if—

(I) the claimant did not receive notice of the appointment of the receiver in time to file such claim before such date; and

(II) such claim is filed in time to permit payment of such claim.

12 U.S.C. § 1821(d)(5)(C).

FIRREA also sets forth certain jurisdictional limitations on the district court's review of administrative decisions made by the FDIC when claims were not filed pursuant to FIRREA's terms.

(D) Limitation on judicial review

Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation [RTC/FDIC] has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). Finally, pursuant to 12 U.S.C. § 1819(b)(2)(A):

Except as provided in subparagraph (D), all suits of a civil nature at common law or in equity to which the Corporation [RTC/FDIC], in any capacity, is a party shall be deemed to arise under the laws of the United States

■■■ When read in conjunction with each other the above quoted sections place certain requirements on parties making claims

against depository institutions subject to liquidation. FIRREA has been interpreted by the Ninth Circuit as requiring parties to exhaust administrative remedies prior to filing or refiling claims in district court. *See Intercontinental Travel Marketing, Inc. v. F.D.I.C.,* 45 F.3d 1278, 1282 (9th Cir.1994) ("*ITM*") (no jurisdiction exists if a claimant does not exhaust FIRREA's administrative remedies) (*citing Henderson v. Bank of New England,* 986 F.2d 319, 320–21 (9th Cir.), *cert. denied,* 510 U.S. 995, 114 S.Ct. 559, 126 L.Ed.2d 459 (1993)). Failure to timely exhaust administrative remedies results in the loss of jurisdiction over certain claims which otherwise could be raised in district court. Thus, the Ninth Circuit has noted that a district court losses jurisdiction if "the claimant fails to file a timely administrative claim." *ITM,* 45 F.3d at 1284. In *ITM,* the Ninth Circuit held that the district court had no jurisdiction to hear a claim where the claimant had filed its administrative claim a year and nine months after the bar date. The FDIC, therefore, asserts that this court does not have subject matter jurisdiction over plaintiffs' claims because the plaintiffs did not exhaust administrative remedies by filing their claim with the RTC prior to the bar date.

■ The plaintiffs agree that FIRREA requires a claimant to exhaust administrative remedies prior to filing suit in federal court. They nevertheless state that they have complied with this requirement by filing claims on February 13, 1995. However, as the Ninth Circuit held in *ITM,* the district courts do not have jurisdiction to hear claims that were not *timely* filed with the RTC. Plaintiffs' claims were not timely filed and their case is indistinguishable from *ITM.*

■ The plaintiffs also argue that according to Judge Turrentine's decision in *Daly,* this court must find that the Plan is a valid plan for retirement benefits and that

the benefits vested for plaintiffs on November 24, 1987. The court agrees that the benefits vested in 1987. *Daly; see Modzelewski v. Resolution Trust Corporation,* 14 F.3d 1374, 1378 (9th Cir.1994) (a right is vested when the employee holding the right is entitled to claim immediate payment).[2] It is also true that the plaintiffs were entitled to immediate payment of benefits in 1987. In fact, one of the defendants, Feigel, began receiving benefits when he retired early in 1989 until the Plan was repudiated by the RTC. However, neither the *Daly* or *Modzelewski* cases address the FDIC's jurisdictional argument. Thus, they are not authority helpful to the plaintiff on this motion.

The plaintiffs further contend that their failure to timely file an administrative claim does not prevent this court from having jurisdiction to grant them their requested relief. First, they assert that FIRREA cannot be retroactively applied to bar the payment of retirement benefits which vested on November 24, 1987—nearly two years prior to the enactment of FIRREA and five years before the appointment of a receiver for HomeFed. Second, they state that the court has jurisdiction pursuant to 28 U.S.C. § 1331 based on several constitutional arguments. Third, they argue that this court has supplemental jurisdiction over plaintiffs' claim that the defendant breached the terms of the Plan. Each of these assertions is addressed below.

### C. *Retroactivity Analysis*

■ Plaintiffs' main argument is that the FIRREA jurisdiction requirements do not apply because FIRREA cannot retroactively deny plaintiffs' rights to pension benefits which vested prior to the date FIRREA was enacted.[3] Plaintiffs rely on *Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) in support of this premise. *Landgraf* holds that:

---

2. The plaintiffs go so far as to state that the *Daly* case acts as collateral estoppel in this action. This is not the case. The *Daly* decision did not address the issue of whether a district court has jurisdiction to hear claims for pension benefits which vested prior to FIRREA's enactment where the claims were filed after the claims bar date.

3. It is clear that FIRREA's claims bar applies to claims which arose prior to the time the RTC took over as receiver for a financial institution. *See ITM,* 45 F.3d at 1284. However, the plaintiffs contend that the claims bar cannot apply to pension rights which vested prior to FIRREA's enactment.

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such result.

*Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505. The plaintiffs contend that FIRREA does not expressly state that it applies retroactively. Therefore, because it imposes new duties and affects the plaintiffs' vested pension rights which arose in 1987, it cannot be applied retroactively to require them to follow an administrative claim procedure and now bar jurisdiction over their claims. The court agrees that FIRREA does not contain an express retroactivity provision. However, this does not require the court to find that the claims bar provision cannot apply to pension benefits which vested prior to FIRREA's enactment.

The Ninth Circuit has had occasion to address the question of whether FIRREA applies retroactively. *See Murphy v. F.D.I.C.*, 38 F.3d 1490, 1501 (9th Cir.1994) (*en banc*) (holding that 12 U.S.C. § 1821(d)(9) does not apply retroactively); *F.D.I.C. v. New Hampshire*, 953 F.2d 478, 486 (9th Cir.1991) (holding that there is no clear congressional intent that FIRREA's statutes of limitations [12 U.S.C. § 1821(e)(12)(A) ] apply only prospectively). However, neither of these decisions addressed the question of whether FIRREA's jurisdictional requirement of filing of administrative claims applies retroactively to pension benefits which vested prior to FIRREA's enactment.

### 1. The Retroactivity Analysis Does Not Apply To FIRREA In This Action

■ The plaintiffs' retroactivity argument fails because the plaintiffs' right to bring a claim for pension benefits actually arose after the enactment of FIRREA. Even though their rights to pension benefits were vested as of November 24, 1987, none of the plaintiffs had a right to bring a claim for these benefits until after the RTC repudiated the Plan. This event occurred in July 1992, after FIRREA was enacted.[4] Thus, FIRREA's administrative claims requirement was not applied retroactively to any preexisting claim. *See McAndrews v. Fleet Bank of Massachusetts, N.A.*, 989 F.2d 13, 16–17 (1st Cir.1993) (a statute's application is not retroactive if it implicates conduct occurring on or after its effective date).

■ The plaintiffs argue that their claims arose with the right to receive payments in November 1987. Since the rights were vested, neither HomeFed, nor any organization that assumed HomeFed's obligations could repudiate the benefits afforded to the plaintiffs. *See Modzelewski*, 14 F.3d at 1377 (in order to be vested, a right need not be free from every contingency or possibility of divestiture). However, this does not mean that the plaintiff's claims for benefits arose at the time the benefits became vested. Even though the plaintiffs were entitled to claim immediate payment for the pension benefits in 1987 and neither HomeFed, the RTC nor the FDIC had a right to repudiate the plaintiffs' vested pension benefits, the plaintiffs' ability to file a claim in district court to enforce these rights did not arise until after the RTC repudiated the Plan in July 1992. Therefore, plaintiffs' retroactivity argument fails and there is no subject matter jurisdiction to hear plaintiffs' claims.[5]

---

**4.** The exact date when the claims arose is not relevant to this analysis as long as the claims arose after the enactment of FIRREA. The earliest the claims could have arisen in this case was the date when HomeFed suspended the Plan on August 22, 1991. This is after the date when FIRREA was enacted.

**5.** Although pension benefits are protected rights, FIRREA's claims bar can act to divest courts of jurisdiction regarding claims for vested pension

Plaintiffs argue, however, that FIRREA is being applied retroactively to add procedural requirements to the preexisting Plan. Assuming this to be so, FIRREA still bars jurisdiction for the reasons noted below.

### 2. Congressional Intent Favors Retroactive Application Of FIRREA

As stated above, the court is not required to reach the issue of whether FIRREA's claims bar should be retroactively applied to the pension benefits which vested prior to FIRREA's enactment. Nonetheless, even were the court to find that the statute is being applied retroactively because it impairs rights a party previously possessed or imposes new duties with respect to transactions already completed, there is clear congressional intent favoring such a result.

■ In *F.D.I.C. v. Updike Brothers, Inc.,* 814 F.Supp. 1035 (D.Wy.1993), the district court found that the FIRREA administrative claim procedures apply retroactively. The court stated:

> Our research has disclosed that in enacting FIRREA Congress was *responding to a crisis* in our nation's savings and loan industry. Congress recognized that in 1988 alone 'the FSLIC acted on 223 problem thrifts including 179 assisted mergers and acquisitions, 26 liquidations, and 18 consolidations' which would ultimately cost the Corporation at least $60–70 billion. H.R.Rep. No. 101–54(I), 101st Cong. 1st Sess. 1, 304, reprinted in 1989 U.S.Code Cong. & Admin.News 89, 100. There were 364 insolvent thrifts still operating at the year-end of 1988. *Id.* Congress noted that one of the main purposes of the Act was to 'establish organizations and procedures ... to resolve failed thrift cases and dispose of the assets of these institutions.' *Id.* at 307, reprinted at 103.
>
> In light of the statements in the legislative history indicating that FIRREA was a response to a crisis noted in the past, and considering FIRREA and the policies behind it as a whole, it is *clear* that Congress intended the streamlined administrative

claims process to be applicable to claims initiated after the enactment of FIRREA regardless of when the acts which gave rise to the claim occurred. We have found nothing in the statute or the legislative history which would suggest to the contrary.

*Updike,* 814 F.Supp. at 1043. Although the *Updike* case was decided prior to *Landgraf* and is not controlling, this court concurs with the *Updike* court's analysis. Statements made by other courts support this conclusion. *See Tillman v. Resolution Trust Corp.,* 37 F.3d 1032, 1035 (4th Cir.1994) (FIRREA was enacted as an emergency measure to enable the RTC and FDIC to resolve and liquidate expeditiously the hundreds of failed financial institutions throughout the country). In *Henderson v. Bank of New England,* the Ninth Circuit noted that:

> ... Congress enacted [FIRREA] to enable the federal government to respond swiftly and effectively to the declining financial condition of the nation's banks and savings institutions.... To effectuate this power, Congress created a claims process for filing, consideration and determination of claims against insolvent banks.

*Henderson,* 986 F.2d at 320. The claims process allows the FDIC to quickly resolve many of the claims against failed financial institutions without unduly burdening the District Courts and increasing the receiver's administrative costs with unnecessary litigation expenses. *Id.; see also McAndrews,* 989 F.2d at 17 ("[I]f courts were to construe FIRREA so as to shield from its grasp all claims arising from contracts formed before FIRREA's enactment, Congress's efforts to protect the public from existing and anticipated bank failures would be hamstrung."); *Marquis,* 965 F.2d at 1154 (FIRREA was designed to create an efficient administrative protocol for processing claims against failed banks); *Rosa,* 938 F.2d at 396 (primary purpose of FIRREA is to quickly and efficiently resolve claims against a failed institution without resorting to litigation).

benefits. *See Rosa v. Resolution Trust Corp.,* 938 F.2d 383, 393–94 (3rd Cir.), *cert. denied,* 502 U.S.

981, 112 S.Ct. 582, 116 L.Ed.2d 608 (1991).

Congress has also noted the importance of the administrative claims procedure:

.    .    .    .    .

Resort to either the District Court or administrative process is available only after the claimant has first presented its claims to the FDIC.

This construct of administrative resolution and de novo judicial review is responsive to the constitutional and statutory concerns with the FSLIC's current claims adjudication process as outline by the Supreme Court in *Coit Independence Joint Venture v. FSLIC,* [489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602] (March 21, 1989)....

... The claims determination procedure set forth in [FIRREA] creates a system which not only meets the concerns raised by the *Coit* case, but also enables the FDIC to dispose of the bulk of claims against failed financial institutions expeditiously and fairly.

H.R.Rep. No. 101–54(I), 101st Cong. 1st Sess., 1, 418–19, reprinted in 1989 U.S.Code Cong. & Admin.News 86, 214–15.

■ Congress passed FIRREA as a remedial statute to cure the disastrous effects of the savings and loan failures. In order to accomplish this task, Congress clearly intended the exhaustion requirements to apply to all claims, regardless of when the underlying acts relating to those claims occurred. Had this not been the case, all of the preexisting claims on insolvent banks that forced them into receivership would not be covered by the very statutory scheme enacted to cover them.

The Supreme Court in *Landgraf,* noted that "[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." 511 U.S. at ——, 114 S.Ct. at 1502. The administrative claim requirement does not alter plaintiffs' pension rights. They still are vested. The plaintiffs merely had to process their claims administratively before proceeding to court. *Plaintiffs point to nothing in the Plan which gives them the right to go to court without following any administrative procedures that the court*

*may require.* Simply put, the FIRREA administrative claims requirement is a procedural change rather than a change in plaintiffs' rights. Therefore, the court finds that retroactive application of FIRREA's administrative claims provisions is permissible pursuant to the requirements set forth in *Landgraf.*

### D. *Independent Jurisdictional Grounds*

#### 1. Due Process

The plaintiffs argue that even if the retroactivity analysis fails and jurisdiction is barred under FIRREA, they have independent jurisdictional grounds for bringing this lawsuit. They contend that they have challenged the constitutionality of the statute as applied under the due process provisions of the Fifth Amendment to the United States Constitution. Thus, they state that there is jurisdiction pursuant to 28 U.S.C. § 1331 to decide this constitutional challenge.

First, plaintiffs have not properly framed their due process argument. They mention that any retroactive application of FIRREA to abrogate or diminish vested pension rights is in violation of due process and prohibited by the Fifth Amendment of the United States Constitution. (Complaint at ¶ 23). However, the plaintiffs have not set forth any facts relating to how the statute has violated their due process rights. Nonetheless, even if the due process argument were properly framed, the court finds that it would not provide jurisdiction for this court to hear plaintiffs' claims.

■ It appears that the underlying premise of the plaintiffs' due process argument is that requiring plaintiffs to submit claims to the RTC as receiver is unconstitutional because they have been deprived of the right to have their claims heard by an Article III court due to the retroactive application of the statute. As discussed above, the retroactivity analysis does not control in this action. In addition, even if the statute were found to apply retroactively, it does not violate plaintiffs' due process rights because had plaintiffs filed their claims within the proper time, they would have had the right to bring them

before an Article III court. *See Rosa,* 938 F.2d at 396–97.[6]

▉▉▉▉▉ "[A]n act of Congress comes to us clothed with a presumption of constitutionality, and the burden is on the plaintiff to show that it violates due process." *In re Consol. U.S. Atmospheric Testing Litigation,* 820 F.2d 982, 990 (9th Cir.1987), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 235 (1988). Although the plaintiffs have attempted to frame their due process claim as one for the wrongful taking of property or impairment of contract in violation of the Fifth Amendment, the court construes the claim as a violation of the right to bring suit for a claim against the RTC/FDIC on a contract in federal court. When no fundamental right is implicated or suspect classification affected, the person complaining of the due process violation must establish that the legislature acted in an arbitrary and irrational fashion. *See United States R.R. Retirement Bd. v. Fritz,* 449 U.S. 166, 174–75, 101 S.Ct. 453, 459–60, 66 L.Ed.2d 368 (1980) (applying rational basis standard to claim for violation of due process rights); *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752 (1975). In this case, the FIRREA claims procedure does not burden any fundamental right or create "suspect" classifications and is not arbitrary or irrational legislation. Its effect, requiring claimants to exhaust administrative remedies prior to filing a case in federal court, is reasonably related to its purpose, to provide an efficient remedy for the savings and loan failures. Although this court has jurisdiction to hear the plaintiffs' constitutional challenge, the due process challenge in this case does not withstand scrutiny. The court does not find that the administrative claims procedure requirements of FIRREA violates due process.

### 2. Equal Protection

The plaintiffs also contend that the RTC's denial of their claims violates the Equal Pro-

tection clause. This argument is raised solely in their moving and opposition papers. The plaintiffs argue that there was an equal protection violation because certain claimants were allowed to file claims even though these claimants did not file proofs of claim with the RTC prior to the October 13, 1992 bar date. Thus, plaintiffs contend that their constitutional rights were violated by the discriminatory application of the statute. They also assert that they require additional discovery to prove whether certain claimants were treated differently.

The plaintiffs complaint cannot be construed as raising an equal protection challenge. Nothing in the complaint even remotely suggests that the plaintiffs' constitutional rights were violated by a discriminatory application of FIRREA or that the defendant acted on the basis of an improper or arbitrary classification, all necessary requirements of an equal protection or due process claim. *See Argabright v. U.S.,* 35 F.3d 472, 476–77 (9th Cir.1994).

▉▉▉▉▉ Even if the complaint could be construed as establishing an equal protection claim, the plaintiffs have failed to demonstrate that the application of FIRREA's administrative claims procedure in this case had a discriminatory effect and that it was motivated by a discriminatory purpose. *See Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 1531, 84 L.Ed.2d 547 (1984). Plaintiffs also ignore the section of FIRREA which allows the RTC or FDIC to pay late filed claims in certain situations. *See* 12 U.S.C. § 1821(d)(5)(C)(ii). They merely state that they believe that claims filed by other claimants who did not satisfy the section 1821(d)(5)(C)(ii) filing requirements may have been allowed and that they should be permitted to do additional discovery to prove this is true. However, the fact that additional discovery could establish an equal protection claim does not require denial of summary judgment. *See Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10 (mere existence

---

**6.** The defendant also argues that the FIRREA claims bar merely affects the remedy to which plaintiff is entitled, not the right, and because it does not do so in a manner that is unreasonable, arbitrary or oppressive, there can be no deprivation of plaintiffs' due process rights. *See Mattson v. Dept. of Labor and Industries of Wash.,* 293 U.S. 151, 155, 55 S.Ct. 14, 16, 79 L.Ed. 251 (1934).

of *some* alleged factual dispute between parties will not defeat an otherwise proper motion for summary judgment). The plaintiffs have not alleged under the requirements for pleading (*see* Fed.R.Civ.P. 11), that the administrative claims exhaustion requirement was applied discriminatorily to them. They have not alleged that similarly situated persons were allowed to file claims as late as theirs.[7] The plaintiffs have not made any factual allegations that an equal protection claim exists. Accordingly, the court does not find that the FIRREA administrative claims procedure is unconstitutional or that the RTC denied the plaintiffs' claims in violation of the Equal Protection clause.

### 3. Supplemental Jurisdiction

The plaintiffs' second cause of action asserts that the defendant breached the Plan (Complaint at ¶¶ 25–29). The plaintiffs contend that this claim is governed by state law and argue that there is supplemental jurisdiction over the claim for breach of the Plan arising from the constitutional challenge to the FIRREA claims bar and jurisdiction provisions. However, the court has already determined that there is no jurisdiction under FIRREA or any valid constitution claims under 28 U.S.C. § 1331 and therefore, there is no supplemental jurisdiction over state law claims. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction when all claims over which it has original jurisdiction are dismissed).

Furthermore, any claim where the RTC or FDIC is a party arises under federal law. 12 U.S.C. § 1819(b)(2)(B); *Brockman v. Merabank*, 40 F.3d 1013, 1015 (9th Cir.1994). The FDIC is a party to this action. Any alleged state law contractual claims for benefits due from the RTC or

FDIC would therefore be preempted by FIRREA which requires the application of federal law to claims in which the RTC is a party. *See Monrad v. F.D.I.C.*, 62 F.3d 1169, 1173 (9th Cir.1995) ("When a federal statute addresses the issue of law in contention, the federal statute governs the dispute despite any federal or state common law that might suggest another result.") (*quoting Bayshore Executive Plaza Partnership v. F.D.I.C.*, 943 F.2d 1290, 1292 (11th Cir.1991)); *see also Resolution Trust Corp. v. Diamond*, 45 F.3d 665, 674–75 (2nd Cir.) (FIRREA preempts state law when state law interferes with methods by which federal statute was designed to achieve its goal), *cert. denied*, — U.S. ——, 115 S.Ct. 2609, 132 L.Ed.2d 853 (1995); *Sahni v. American Diversified Partners*, 83 F.3d 1054, 1059–60 (9th Cir.1996). Therefore, plaintiffs' claim for breach of the Plan is preempted by FIRREA and there is no supplemental jurisdiction over any state claim relating to plaintiffs' second cause of action for breach of the Plan.

### *CONCLUSION AND ORDER*

For the above stated reasons IT IS HEREBY ORDERED that:

1. The defendant's motion for summary judgment is GRANTED as to all causes of action;

2. The plaintiffs' motion for summary judgment is DENIED; and

3. Judgment shall be entered for the defendants against all plaintiffs on all claims in the complaint.

**IT IS SO ORDERED.**

---

7. At oral argument plaintiffs' counsel stated that he might seek to amend the complaint after conducting further discovery. However, discovery should be used to flesh out claims, not search for new ones. *See PVM Redwood Co., Inc. v. United States*, 686 F.2d 1327, 1331 (9th Cir. 1982), *cert. denied*, 459 U.S. 1106, 103 S.Ct. 731, 74 L.Ed.2d 955 (1983). In addition, the plaintiffs have failed to show that discovery would produce any evidence of an equal protection violation. *See Building and Const. Dept. v. Rockwell Intern.*, 7 F.3d 1487, 1496 (10th Cir.1993). The plaintiffs' counsel merely states in his Rule 56(f) declaration that he "believes" the discovery

sought on the equal protection issue will establish that the RTC/FDIC has impermissibly preferred other claimants over plaintiffs and have selectively enforced the claims bar and jurisdiction provisions of FIRREA. (Supplemental Declaration of William Lancaster at ¶ 4). The court has discretion to deny Rule 56(f) relief. *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir.1995). In this case, the plaintiffs' counsel's conclusory statement that he believes evidence of an equal protection violation exists does not require the court to deny or continue this motion to allow further discovery.