Richard W. ST. HILAIRE,
Sr., Plaintiff,

v.

INDUSTRIAL ROOFING CO., John St. Hilaire, and Richard St. Hilaire, Jr., Defendants.

No. CIV.04–CV–141–P–C.

United States District Court,
D. Maine.

Oct. 26, 2004.

Peter S. Black, James G. Goggin, Verrill & Dana, Portland, ME, for Plaintiff.

Daniel A. Nuzzi, Brann & Isaacson, Lewiston, ME, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

GENE CARTER, Senior District Judge.

Now before the Court is Defendants' Motion to Dismiss Plaintiff's claims for breach of contract and unpaid wages (Docket Item No. 14). Defendants assert that Plaintiff's breach of contract claims (Counts I–IV of the Amended Complaint (Docket Item No. 20))[1] are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and that Plaintiff's claim under Maine's unpaid wage statute, 26 M.R.S.A. § 626, fails to state a claim upon which relief can be granted or, in the alternative, is preempted by ERISA.

## I. FACTUAL BACKGROUND

The allegations described herein are derived from Plaintiff's Amended Complaint. Plaintiff, Richard W. St. Hilaire, Sr., was the founder of Defendant Industrial Roofing Corporation ("IRC"). Amended Complaint ¶ 8. On December 31, 1990, Plaintiff gave his three sons, the named individual Defendants in this action,[2] one-half of the stock of IRC and sold his sons the other half of the stock for approximately three million dollars. *Id.* at ¶ 9. In 1996, the sons complained to Plaintiff that the price they had agreed to pay for IRC was excessive. As a result, on April 19, 1996, Plaintiff and his sons entered into a settlement agreement ("Settlement") that reduced the sons' fi-

nancial obligations to Plaintiff to approximately one million dollars. *Id.* at ¶ 11.

The Settlement required the sons to pay Plaintiff $700,000 at closing, *see* Settlement at 1, and other compensation as follows:

> Father agrees his present Agreement of Employment is terminated as of December 31, 1995. At closing, IRC shall pay the Father the remaining deferred salary in the amount of $15,625.00 plus deferred salary and note payments in the amount of $31,686. In consideration of Father's past years of service as a founder and key employee of IRC during which Father received less than full compensation for his duties, IRC shall pay Father non-qualified deferred compensation of One Hundred Twenty Thousand Dollars ($120,000) per year for a period of ten years with the payments to be made monthly in the amount of Ten Thousand Dollars ($10,000.00) each, the first such monthly payment commencing twelve (12) months after the Closing and one hundred nineteen (119) subsequent monthly payments of Ten Thousand Dollars ($10,000.00) each to be made thereafter on the first day of each month.

*Id.* at 1–2. Each son individually guaranteed one-third of the deferred compensation payments to Plaintiff. *Id.* at 2. On November 1, 1999, IRC defaulted on the deferred salary payment and continued to miss payments during the next two years. Amended Complaint ¶ 14. On January 25, 2002, Plaintiff filed an action in this Court against IRC and his three sons seeking to recover the missed payments. *See St. Hilaire v. Industrial Roofing Co.*, No. 02–03–

---

**1.** Plaintiff's Amended Complaint includes an ERISA count. Defendants contend that the inclusion of an ERISA count implies that Plaintiff's state law claims lack merit. *See* Defendants' Reply Memorandum in Support of Motion to Dismiss (Docket Item No. 29) at

1. This contention is without merit as Plaintiff may plead in the alternative under Fed. R.Civ.P. 8(e)(2).

**2.** The claims against Defendant Jeffery St. Hilaire were dismissed without prejudice.

P–C (D.Me.2002) ("St. Hilaire I"). In St. Hilaire I, judgment was entered by the Clerk of Court on February 27, 2002, in the amount of $118,001.00, which included overdue payments, attorneys' fees, and accountants' fees (St. Hilaire I, Docket Item No. 11).

After the entry of judgment in St. Hilaire I, IRC again began making regular payments to Plaintiff. Amended Complaint ¶ 17. However, on August 1, 2002, IRC and the sons again fell behind in the payments under the Settlement. *Id.* ¶ 18. As of the filing of the Amended Complaint, IRC and the sons were in arrears by $115,000. *Id.* ¶ 21.

## II. APPLICABLE LEGAL STANDARD

Defendants' Motion to Dismiss invokes Fed.R.Civ.P. 12(b)(6). "In ruling on a motion to dismiss [under Rule 12(b)(6) ], a court must accept as true all the factual allegations in the complaint and construe all reasonable inferences in favor of the plaintiffs." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.,* 267 F.3d 30, 33 (1st Cir.2001). "When presented with a motion to dismiss, the district court must take as true the well-pleaded facts as they appear in the complaint, extending the plaintiff every reasonable inference in his favor." *Medina–Claudio v. Rodriguez–Mateo,* 292 F.3d 31, 34 (1st Cir.2002) (internal citation omitted). The Defendant is entitled to dismissal for failure to state a claim only if "it appears to a certainty that the plaintiff would be unable to recover under any set of facts." *State St. Bank & Trust Co. v. Denman Tire Corp.,* 240 F.3d 83, 87 (1st Cir.2001). If factual allegations in the complaint are based on documents whose authenticity is not challenged, the

court may look to those documents in addition to the complaint itself. *Alternative Energy,* 267 F.3d at 33–34.

## III. DISCUSSION

 Defendants' Motion to Dismiss is premised on the notion that the Settlement constitutes a "top hat" plan under ERISA. The first question for the Court is thus whether on its face the Complaint shows the establishment or maintenance of a "plan, fund, or program" covered by ERISA. 29 U.S.C. § 1002(2). A top hat plan is an employee benefit plan that is "unfunded and maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees." *Cogan v. Phoenix Life Ins. Co.,* 310 F.3d 238, 242 (1st Cir.2002) (quoting 29 U.S.C. § 1101(a)(1)). The threshold issue to determine with respect to Defendants' ERISA preemption defense is the existence of an ERISA plan.

In the context of a motion to dismiss, this Court must provide Plaintiff's Complaint with every reasonable inference. In reviewing the Complaint and the Settlement, which was attached thereto, the Court notes that nowhere does the Settlement claim to be a "plan" or to be governed by ERISA. In fact, the Settlement explicitly states that it "shall be governed by and enforced in accordance with, the laws of the State of Maine." Settlement at 5. Nowhere does the Settlement explicitly invoke ERISA. Furthermore, there is no indication that Defendants ever filed a statement with the Department of Labor, in accordance with the reporting requirements of 29 C.F.R. 2520.104–23, indicating the existence of a top hat plan.[3]

---

**3.** 29 C.F.R. 2520.104–23 provides in part:
(a) Purpose and scope. (1) This section contains an alternative method of compli-

ance with the reporting and disclosure requirements of part 1 of title I of the Employee Retirement Income Security Act of

Although some courts have held that in certain instances ERISA may preempt written agreements that are not specifically identified as "plans," *see, e.g., Modzelewski v. Resolution Trust Corp.*, 14 F.3d 1374, 1377 (9th Cir.1994), on the existing record in this case the Court is unable to determine that ERISA is intended to govern the Settlement or has been treated by the parties to it to do so.[4] Without these facts, the Court is unable to determine whether ERISA preempts the state law claims made under the Settlement. Further development of the record is necessary to determine whether the Settlement is a schedule of payments for the debts owed to Plaintiff for the sale of IRC, thus governed by Maine law, or an employee benefit plan governed by ERISA.[5] Ac-

1974 for unfunded or insured pension plans maintained by an employer for a select group of management or highly compensated employees, pursuant to the authority of the Secretary of Labor under section 110 of the Act (88 Stat. 851).

(2) Under section 110 of the Act, the Secretary is authorized to prescribe an alternative method for satisfying any requirement of part 1 of title I of the Act with respect to any pension plans, or class of pension plans, subject to such requirement.

(b) Filing obligation. Under the authority of section 110 of the Act, an alternative form of compliance with the reporting and disclosure requirements of part 1 of the Act is provided for certain pension plans for a select group of management or highly compensated employees. The administrator of a pension plan described in paragraph (d) shall be deemed to satisfy the reporting and disclosure provisions of part 1 of title I of the Act by -

(1) Filing a statement with the Secretary of Labor that includes the name and address of the employer, the employer identification number (EIN) assigned by the Internal Revenue Service, a declaration that the employer maintains a plan or plans primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees, and a statement of the number of such plans and the number of employees in each, and

(2) Providing plan documents, if any, to the Secretary upon request as required by section 104(a)(6) of the Act. Only one statement need be filed for each employer maintaining one or more of the plans described in paragraph (d) of this section. For plans in existence on May 4, 1975, the statement shall be filed on or before August 31, 1975. For a plan to which part 1 of title I of the Act becomes applicable after May 4, 1975, the statement shall be filed within 120 days after the plan becomes subject to part 1. *Id.* The Court finds no indication in the existing record that Defendants ever sought to comply with the filing regulations.

4. Defendants rely on the language from *Modzelewski* which states, "Because ERISA's definition of a pension plan is so broad, virtually any contract that provides for some type of deferred compensation will also establish a *de facto* pension plan, whether or not the parties intended to do so." *Modzelewski*, 14 F.3d at 1377. This Court is not persuaded by the Ninth Circuit language in *Modzelewski*. More appropriate guidance on this issue is provided by both the Supreme Court and the First Circuit. In *District of Columbia v. Greater Wash. Bd. of Trade*, 506 U.S. 125, 130 n. 2, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992), the Supreme Court stated that finding the existence of a plan requires that the employer have at least "some minimal, ongoing administrative scheme or practice ...." The First Circuit has similarly held that the "crucial factor in determining if a plan has been established is whether the [proffering of an employee benefit] constituted an expressed intention by the employer to provide benefits on a regular and long term basis." *Belanger v. Wyman–Gordon Co.*, 71 F.3d 451, 455 (1st Cir.1995), quoting *Wickman v. Northwestern Nat'l Ins. Co.*, 908 F.2d 1077, 1083 (1st Cir. 1990). On the existing record, the Court is unable to find the existence of any administrative scheme or an intention on the part of Defendants to pay continuing employee benefits as defined by ERISA.

5. Defendants' Motion to Dismiss Counts II–IV fails in any event on the ground that the sons are not employers for purposes of ERISA. Counts II–IV allege breach of guaranty agreements, not breach of any employee benefit plan. Guaranty agreements are not covered by the ERISA preemption provisions.

cordingly, the Court will deny Defendants' Motion to Dismiss Counts I–IV.[6]

 The Court next considers whether Plaintiff's claim for unpaid wages under 26 M.R.S.A. § 626 (Count V), states a claim upon which relief can be granted. 26 M.R.S.A. § 626 provides in part:

> An employee leaving employment must be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid, provided that any overcompensation may be withheld if authorized under section 635 and any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by the employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment has the same status as wages earned.

*Id.* Defendants claim that "the impetus for the payment of any so-called 'deferred compensation' to Richard Sr. was the sale of company stock and the breaking of any connection with the company." Defendants' Motion to Dismiss at 12. However, Plaintiff alleges, and the Settlement states, that the payments to Plaintiff are "in consideration of [his] past years of service as a founder and key employee of IRC during which [Plaintiff] received less than full compensation for his duties ...." Settlement at 1–2. Whether the payments to Plaintiff constitute compensation as part of the stock sale or whether they constitute past unpaid wages is a factual determination which requires development of the record.

---

**6.** Because the Court will deny Defendants' Motion to Dismiss on ERISA grounds, it need not reach Plaintiff's assertion that Defendants are barred by *res judicata* from raising an ERISA defense.

## IV. CONCLUSION

It is **ORDERED** that Defendants' Motion to Dismiss Counts I–V be, and it is hereby, **DENIED**.