Patton WILSON, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, as receiver for Cross-land Savings, FSB, Defendant.

Gloria MASIELLO, as Administrator of the estate of Simone Masiello, and Gloria Masiello, individually, Plaintiff,

v.

Brian L. DICKERSON, and Federal Deposit Insurance Corporation, as receiver for Crossland Savings, FSB, successor by merger of Brooklyn Savings Bank, Defendants.

Nos. CV 92–1096, CV 92–1100.

United States District Court,
E.D. New York.

July 8, 1993.

Patton Wilson, pro se.

William F. Johnson, Brooklyn, NY, for plaintiff Gloria Masiello.

Whitman & Ransom (Robert S. Goodman, of counsel), New York City, for defendant F.D.I.C.

## MEMORANDUM AND ORDER

### NICKERSON, District Judge:

These two actions originated in New York State courts. Plaintiff Patton Wilson filed suit *pro se* against Crossland Savings, FSB (Crossland). Plaintiff Gloria Masiello and her husband, Simone Masiello, now deceased, brought suit against Brooklyn Savings Bank, later merged into Crossland.

After Crossland became insolvent the Federal Deposit Insurance Corporation (FDIC) was appointed receiver, and, pursuant to 12 U.S.C. § 1819(b)(2) removed the cases to this court. It has moved for, among other things, dismissal in both cases for lack of subject matter jurisdiction.

This court treats the motions in both cases together.

### I.

The following are the essential facts.

Wilson's *pro se* action, brought on June 3, 1991 in New York County Civil Court, by "Summons with Endorsed Complaint", alleged "failure to return money." Crossland's answer alleged that another person (identified in the motion papers as Wilson's wife) claimed an interest in the account in issue and that the funds claimed by Wilson were held because of a claim by that other person.

Simone and Gloria Masiello brought their action on November 9, 1981, in New York Supreme Court, Kings County, against Brooklyn Savings Bank and Brian L. Dickerson, an officer of the bank. The complaint sought damages for wrongful discharge and intentional infliction of emotional distress because of the firing of Simone and for Gloria's loss of consortium. The defendants denied liability on December 24, 1981. Four days later Simone died. Gloria then became administratrix of his estate. The case was later remanded to the Civil Court of the City of New York.

On January 24, 1992 the Office of Thrift Supervision appointed the FDIC as receiver for Crossland. Under 12 U.S.C. § 1821(d)(3) the receiver has authority to determine "claims" against a bank in liquidation and must over a two month period publish three notices to the bank's "creditors to present their claims, together with proof" by a specified date, not less than 90 days after the first publication. The receiver must also mail a similar notice to creditors shown on the bank's books.

Within the prescribed times the receiver published notices reading, in pertinent part, as follows.

Creditors of such institution [Crossland] are notified to present their claims, together with proof thereof, to the Receiver by May 8, 1992, or such claims may be disallowed by the Receiver.

Claims filed after May 8, 1992, may be barred in accordance with 12 U.S.C. Section 1821(d)(5)(c), as amended.

All claims, with proof, must be filed with the Receiver at [a New Jersey address].

Around March 2, 1992 the FDIC sent a printed form letter by certified mail to Crossland creditors, including Wilson and

William F. Johnson, Esq., the attorney for Masiello. The letter, addressed to "Dear Sir/Madam", recited that the FDIC had been appointed as receiver, that "all creditors and claimants of the institution must file their claims, with proof thereof, [at a New Jersey address] in order to have their claims considered by the Receiver", and that the claim form attached "must be completed and returned no later than May 8, 1992 or the claim may be forfeited."

While the FDIC attaches to its motion papers receipts for the letters to Wilson and Johnson with alleged addressees' signatures on them, neither signature appears to be in the name of the addressee.

Although the March 2, 1992 letter gave Wilson, the *pro se* plaintiff, and Johnson until May 8, 1992 to file claims, Cynthia Boyer Okrent, a lawyer representing the FDIC, sent a letter on April 9, 1992, to Wilson stating that "the Court lacks jurisdiction over the above-entitled action, as your client has not exhausted the administrative claims procedure prescribed in 12 U.S.C. § 1821(d)."

The letter does not explain how this court had lost jurisdiction some thirty days before the final date for Wilson to file a claim. In support of the statement that the court had lost jurisdiction the letter cites five court decisions. None of them concerned a claim made in an action filed before receivership. In addition, two of the five cases were cited as unpublished cases and one was miscited as to the page in the reports.

It is puzzling how the FDIC expected a *pro se* litigant to make a judgment based on this letter.

The letter requests that Wilson voluntarily discontinue the action or the FDIC will "make an immediate appropriate motion to dismiss the action and to seek costs, as the FDIC views pleadings that are not founded upon existing law as a serious matter." The letter concludes by asking Wilson "to review the law in this area and discuss this issue with your client" and advise Ms. Okrent of "your client's position". Otherwise the "appropriate motion" would follow.

Ms. Okrent mailed an identical letter, dated April 10, 1992, to Johnson.

The letter to Wilson did not have the desired coercive effect. In November 1992 he wrote to this court referencing the title of his case in this court and saying:

"I am 92 years old and in April I will be 93. (if God permits[) ]. My entire life savings is being with held in litigations. I am writing to you in hopes that you would expedite the monies that is being with held. At my age this is creating a hardship on me.

"Please your honor HELP me in my stressful situation.

"Thanking you in advance for taking the time out to read this letter."

The penmanship of the signature bears no resemblance to that of the signature on the receipt for the form letter sent March 2, 1992.

The plaintiffs in both cases did not respond to the letters or notices.

The FDIC motions ask (1) that it be substituted as defendant in place of Crossland, and (2) that the court grant summary judgment because the failure to file timely claims deprived the court of subject matter jurisdiction. The motion addressed to the Masiello complaint in addition asks for dismissal for failure to substitute Gloria Masiello as administratrix or in the alternative for an order substituting her as plaintiff.

This court referred the motions to Magistrate Judge John L. Caden. He recommended that the dismissal motions be denied, that Gloria Masiello as administrator be substituted as a plaintiff, and that counsel be appointed for Wilson.

This court considers the motions *de novo*. 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b).

One of the main issues is whether the legislation prescribing the powers and duties of the FDIC as receiver, 12 U.S.C. § 1821(d), should be read to oust a court from the jurisdiction it has obtained over an action brought against a bank prior to the appointment of the FDIC as receiver. The FDIC says that even though it is on notice of a litigant's claim through the papers previously served in the litigation, it may insist on the filing with it of a further and redundant

claim, and that a failure by the litigant to make such a redundant filing in time permits the FDIC to oust the court from the case.

## II.

■ Analysis of the pertinent text of 12 U.S.C. § 1821(d) begins with paragraph (3). It says the FDIC "may, as receiver, determine claims" and provides for the publication of notices to creditors "to present their claims, together with proof, to the receiver" by a specified date.

The FDIC is then, within 180 days of the filing of a claim, to notify the claimant of its allowance or disallowance. Paragraph (5). With exceptions not pertinent here, claims filed after the date specified in the notices "shall be disallowed."

Paragraph (6) provides that within 60 days beginning with the earlier of (i) the end of the 180 days referred to in paragraph (5) or (ii) the date of notice of disallowance, the claimant may request administrative review "or file suit on such claim (or continue an action commenced before appointment of the receiver)."

The FDIC may apply for a 90 day stay of a judicial action on a claim. Paragraph (12). But "the filing of a claim with the receiver shall not prejudice any right of the claimant to continue any action which was filed before the appointment of the receiver."

Finally paragraph (13), subparagraph (D), headed "Limitation on Judicial Review", provides

"Except as otherwise provided in this subsection, no court shall have jurisdiction over—

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver; or

(ii) any claim relating to any act or omission of such institution as receiver."

While, as noted above, paragraph (5) provides that claims filed after the date specified by the FDIC are to be disallowed, it is hardly unreasonable to construe a formal "claim" made in a lawsuit brought before the appointment of the receiver as a timely "claim" filed with the receiver as of the date of its appointment. A claim made in a lawsuit is obviously serious. Certainly the FDIC has notice of it. *See Tuxedo Beach Club Corp. v. City Fed. Sav. Bank,* 737 F.Supp. 18, 19 (D.N.J.1990) (Resolution Trust Corporation, as receiver, administratively processed claims made in suit filed prior to receivership though no claim filed with the receiver).

In these very cases the FDIC when it removed the cases to this court had knowledge of the complaints and of the banks' answers denying liability. A duplicate filing cannot be justified by some supposed need for notice of the nature of the claims and would serve no constructive end.

Furthermore, under paragraph (5) a litigant who makes a timely redundant filing with the FDIC may continue his action, though the FDIC disallows the claim. Thus the only saving in judicial time and resources to be accomplished by the FDIC's statutory construction would be at the expense of unsophisticated *pro se* plaintiffs. A court should not impute such an unworthy purpose to Congress.

Substantial litigants with cautious counsel who consider the legislation at least ambiguous will file administrative, bureaucratic claims. But the unwary *pro se* litigant may not realize the significance of the failure to make the administrative filing or may conclude that the claim has been formalized in the lawsuit and thus the administrative filing is inapplicable to it.

In construing the statute the court must also consider the extent to which the FDIC's reading might impinge on constitutional issues.

The Supreme Court in *Coit Independence Joint Venture v. Federal Sav. & Loan Ins. Corp.,* 489 U.S. 561, 109 S.Ct. 1361, 103 L.Ed.2d 602 (1989), read a federal statute not to grant the Federal Savings and Loan Insurance Corporation (FSLIC), as receiver, exclusive authority to adjudicate state law claims asserted against a failed savings and loan association.

In that case the plaintiff had brought suit against such an association before it was declared insolvent and placed under the receivership. On FSLIC's motion the district court dismissed the suit for lack of subject matter jurisdiction, finding that FSLIC had exclusive jurisdiction to determine the claim. Plaintiff appealed and also filed a claim within the date set by FSLIC.

The Supreme Court concluded that the receiver had "no statutory authority to divest the courts of subject matter jurisdiction over [state law] claims." 489 U.S. at 585, 109 S.Ct. at 1375. The court said that it would be reasonable to require creditors to give notice by filing an administrative claim before initiating a suit, but that

> In cases where suit has already been filed against a savings and loan association before FSLIC is appointed receiver, FSLIC will receive notice of those claims when it steps into the shoes of the failed savings and loan and takes control of its assets. Trial courts can then determine, in their discretion, whether to stay the proceedings for a limited time....

489 U.S. at 585, 109 S.Ct. at 1374–75.

Construing the statute as it did, the court did not reach the claim that the adjudication by the receiver subject to review under the Administrative Procedure Act would violate Article III of the constitution, citing *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1987).

The *Coit* decision also did not reach the claimant's due process and Seventh Amendment challenges, stating that the legislation "can and should be read to avoid" constitutional difficulties, and citing *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 106 S.Ct. 3245, 92 L.Ed.2d 675 (1986), and *Crowell v. Benson*, 285 U.S. 22, 62, 52 S.Ct. 285, 296–297, 76 L.Ed. 598 (1932).

According to the FDIC the statute now before the court permits the FDIC, by following the procedures set forth in the legislation, to oust a court under specified circumstances from the jurisdiction it has obtained over an individual case. Arguably this raises Article III questions that this court should attempt to avoid if possible.

Applying the principles stated in *Coit*, this court interprets section 1821(d) to permit the continuance of a litigation over a claim filed against the bank prior to the appointment of the receiver although the plaintiff has not filed a further and redundant claim with the receiver.

There is no explicit language in that section focusing on whether an action filed pre-receivership must be dismissed for failure to file such a redundant claim. But the FDIC points to three parts of the section that it says requires that result.

Paragraph (13), subparagraph (D), quoted above, says "no court shall have jurisdiction over" a claim or action "except as otherwise provided" in the legislation, and paragraph (5) states that claims filed after the specified date "shall be disallowed". But it seems reasonable to treat the filing of a judicial claim against the entity into whose shoes the FDIC has stepped as the filing of a "claim" with the FDIC as of the date of its appointment as receiver.

Paragraph (6), subparagraph (A) gives a claimant 60 days "to file suit" on a claim "(or continue an action commenced before the appointment of the receiver)" if the receiver disallows the claim or fails to make a determination on it within 180 days. That language can be read to imply that only if a claimant has filed a redundant claim with the receiver can the claimant continue the legal action. But there is no reason it cannot also be read to mean that one who has not filed a redundant claim may continue an action.

Paragraph (5), subparagraph (F)(ii) states that, subject to paragraph (12) (providing for a 90 day stay of a pending judicial action on the receiver's request), the filing of a claim shall not prejudice the right of a claimant to continue an action filed before the receiver's appointment. If the "claim" in a lawsuit is deemed filed with the FDIC on its appointment this statutory language does not apply. But it does assure a creditor that makes a redundant claim that the legal action will not be prejudiced.

Adopting the foregoing reading of the statutory language the court avoids any constitutional difficulties and preserves the rights of litigants to have the judicial determination they sought when they brought suit.

This court reaches the same result as in *Cadow v. Oak Tree Savings Bank*, No. 92–1224, 1992 WL 373625, 1992 U.S.Dist. LEXIS 18827 (E.D.La. Dec. 8, 1992). The court respectfully declines to follow *Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103 (10th Cir.1991); *United Bank of Waco v. First Republic Bank*, 758 F.Supp. 1166 (W.D.Tex.1991); *Homeyer v. Yorkville Fed. Savings & Loan Assoc.*, No. 90 CV 5830, 1991 U.S.Dist. LEXIS 17939, 1991 WL 274226 (S.D.N.Y. Dec. 12, 1991); and *International Fidelity Ins. Co. v. Yorkville Federal Savings and Loan Assoc.*, No. 90 Civ. 3767, 1990 WL 165720 at \*1 (S.D.N.Y. Oct. 19, 1990), to the extent that they are inconsistent with this court's holding.

This court determines that it retains jurisdiction over judicial actions filed against a financial institution prior to the appointment of the FDIC as receiver, even when the party fails to file a later redundant claim with the FDIC.

### III.

■ Even assuming that the FDIC's construction of the statute is proper, this court finds that the FDIC had not satisfied the statutory notice provisions.

The form letter sent by the FDIC about March 2, 1992 recites that claimants must file their claims by May 8, 1992 "in order to have their claims considered by the Receiver" and if they do not do so the claims "may be forfeited."

A lay person who has filed suit *pro se* is not required to assume that his lawsuit is jeopardized by the fact that the entity he sued is not going to "consider" his claim. Wilson must have already concluded when the bank put in its answer that his claim had already been considered and rejected. The letter did not even explain to him that the filing of a claim would not prevent his lawsuit from continuing even if the FDIC saw no merit in it.

Even if he had understood what "may be forfeited" means, it was hardly fair to require him to infer it meant the court could not even consider his claim. It is more likely that having placed his confidence in a court in the United States he thought no mere bureaucratic intricacies could oust the court from consideration of his case.

Moreover, the FDIC is simply a stakeholder of money claimed both by Wilson and by his wife. Presumably it has also sent a "notice" to the wife. The FDIC does not reveal whether, if she has not filed a claim, it intends to "forfeit" her interest as well and obtain funds to which it has no right. Why the FDIC did not bring interpleader proceedings has not been explained.

Even if the March 12, 1992 letter had been adequate to alert Wilson to the consequences of a failure to file a redundant claim by May 8, 1992, the letter from Ms. Okrent mailed one month before that date was thoroughly misleading. It informed the recipient the court had already lost jurisdiction, cited (and miscited) inapplicable cases, two of which were unpublished, and threatened dire consequences in the form of unspecified and unexplained "costs" because it was "a serious matter" to bring an action "not founded upon existing law."

A recipient of such a letter could well conclude that there was no point in filing a claim on or before May 8, 1992 and that therefore he should not bother.

This court holds that the notice given by the FDIC was inadequate to comply with the statute.

### IV.

Wilson has applied for appointment of an attorney. It is evident he will be unable effectively to represent himself. The clerk is directed to appoint an attorney from the *pro bono* panel. Gloria Masiello as administratrix of her husband's estate is substituted as a plaintiff. The FDIC's motions to dismiss in both cases are denied.

So ordered.