[Cite as *Bank of Am. v. Macho*, 2011-Ohio-5495.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96124**

# BANK OF AMERICA

PLAINTIFF-APPELLEE

vs.

# JUNE MACHO, ET AL.

DEFENDANTS-APPELLANTS

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-696021

**BEFORE:** Celebrezze, P.J., Sweeney, J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 27, 2011

**ATTORNEY FOR APPELLANT JUNE MACHO**

Mark S. Shearer
8193 Avery Road
Suite 201
Broadview Heights, Ohio   44147


**FOR APPELLEES**

For Bank of America
Bryan Kostura
Bricker & Eckler, L.L.P.
1001 Lakeside Avenue
Suite 1350
Cleveland, Ohio   44114
-and-
Nelson M. Reid
Anne Marie Sferra
Bricker & Eckler, L.L.P.
100 South Third Street
Columbus, Ohio   43215-4291

For Federal Deposit Insurance Corporation, as Receiver for
Washington Mutual Bank, f.k.a. Washington Mutual Bank, FA
Gregory J. O'Brien
Michael J. Zbiegien, Jr.
Taft Stettinius & Hollister, L.L.P.
3500 BP Tower
200 Public Square
Cleveland, Ohio   44114-2302

Oak Mortgage Co., pro se
c/o Darren Rose
33250 N. Burr Oak Drive
Solon, Ohio   44139

Bob Tengler, pro se
15901 Evening Star Avenue
Maple Heights, Ohio   44137

FRANK D. CELEBREZZE, JR., P.J.:

{¶ 1} Appellant, June Macho, brings the instant appeal challenging the trial court's dismissal of her cross-claim against Washington Mutual Bank, F.A. ("WaMu") and the Federal Deposit Insurance Corporation ("FDIC"), a substituted party as receiver for WaMu.

{¶ 2} In October 2006, Macho agreed to refinance her home for $149,250 with WaMu and signed a note and mortgage evidencing the debt. The loan was originated by Oak Mortgage Company ("Oak") and its employee, mortgage broker Bob Tengler. Macho alleges that the loan application was fraudulently completed by Tengler to show that Macho received more income from social security and her pension than she stated and that she received conflicting and inaccurate disclosure statements from WaMu, Oak, and the title company involved in the transaction, Anthem Escrow ("Anthem").[1] Macho also agreed to a second loan from WaMu in the amount of $15,000.

{¶ 3} On September 25, 2008, WaMu was taken over by the Office of Thrift Supervision, and the FDIC was appointed as receiver over WaMu's assets, which JPMorgan Chase Bank, N.A. ("Chase") purchased.

{¶ 4} By June 17, 2009, Macho had become delinquent on her mortgage, and Bank of America N.A. ("BofA"), assignee of the primary note and mortgage, filed a foreclosure suit on that date. After a title search, BofA named WaMu as a party because

---

[1] Macho also alleged that Anthem was closely associated with Oak and violated Truth in Lending Act regulations.

it may have had an interest in the property as a result of the $15,000 loan. BofA served WaMu at the address of a Chase office in Ohio. Macho then filed an answer, cross-claim, counterclaim, and third-party complaint against BofA, WaMu, Oak, Tengler, and Anthem.

{¶ 5} On July 8, 2010, the FDIC made a limited appearance to file a motion to be substituted for WaMu and moved to dismiss the complaint against it. A hearing was held regarding the motion to dismiss where the FDIC argued that the trial court did not have subject matter or personal jurisdiction over it, relying on provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub.L. 101-73, 103 Stat. 183. The trial court ultimately agreed with the FDIC and dismissed the complaint against it for lack of subject matter jurisdiction. Macho timely filed a notice of appeal assigning a single error.

{¶ 6} I. "The trial court erred when it found that it had no subject matter jurisdiction over the FDIC."

## Law and Analysis

### I. Subject Matter Jurisdiction

{¶ 7} After a party files a Civ.R. 12(B)(1) motion to dismiss, the trial court must determine whether the complaint contains allegations of a cause of action that the trial court has authority to decide. *Crestmont Cleveland Partnership v. Ohio Dept. of Health* (2000), 139 Ohio App.3d 928, 936, 746 N.E.2d 222. The Ohio Supreme Court has further noted that the "trial court is not confined to the allegations of the complaint when determining its subject-matter jurisdiction pursuant to a Civ.R. 12(B)(1) motion to dismiss, and it may consider material pertinent to such inquiry." *Southgate Dev. Corp. v. Columbia Gas Transm. Corp.* (1976), 48 Ohio St.2d 211, 358 N.E.2d 526, paragraph one of the syllabus. We apply a de novo review to the trial court's decision on a motion to dismiss for lack of subject matter jurisdiction. *Crestmont Cleveland Partnership* at 936.

{¶ 8} FIRREA was enacted in 1989 after the savings and loan scandals of the 1980's to allow the expeditious seizure of a failing bank to limit its effect on the financial system and individual depositors. *Brady Dev. Co., Inc. v. Resolution Trust Corp.* (C.A.4, 1994), 14 F.3d 998, 1002-1003. This system allows the FDIC to be appointed receiver over a failing or failed financial institution's assets for the purpose of resale or distribution in a fair and orderly manner.[2] Id. at 1003. FIRREA also establishes a mandatory claims procedure for creditors seeking monetary redress from the defunct

---

[2] The Resolution Trust Corporation ("RTC") was the statutory predecessor to the FDIC, and case law dealing with the RTC is generally applicable to the FDIC. *Resolution Trust Corp. v. First Am. Bank* (C.A.9, 1998), 155 F.3d 1126, 1127; *Nasoordeen v. F.D.I.C.* (Mar. 17, 2010), C.D. Cal. No. CV 08-05631, fn.5.

financial institution for all claims. *Robbins v. Foothill Nissan* (1994), 22 Cal.App.4th 1769, 1783-1785, 28 Cal.Rptr.2d 190.

## A. The FIRREA Claims Process

{¶ 9} The trial court does not have authority to determine Macho's claims against WaMu because provisions in FIRREA limit jurisdiction and mandate a claims process, which Macho had not undertaken at the time she filed her complaint.

{¶ 10} 12 U.S.C. 1821(d)(3)-(13) provides for a mandatory claims procedure. 12 U.S.C. 1821(d)(3) and (4) vest the FDIC with authority to promulgate rules for the determination of all claims against the assets of failed financial institutions. 12 U.S.C. 1821(d)(6) provides for very limited judicial review with jurisdiction restricted to the "the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia * * *."[3]

{¶ 11} Macho's claims against WaMu are of the type constituting "claims" under FIRREA. In a federal bankruptcy case, *In re Shirk* (Bankr.Ct.S.D.Ohio 2010), 437 B.R. 592, similar claims alleging fraud and violations of state and federal lending laws were brought against Chase as successor to WaMu after the FDIC had been appointed receiver of WaMu's assets. The *Shirk* court held that "[t]he Shirks' claims for misrepresentation (Complaint, ¶ ¶ 9 & 10), TILA violations (15 U.S.C. § 1601, et seq.) (Complaint, ¶ ¶ 11–17), and negligence (Complaint, ¶ 20) constitute claims 'relating to any act or

---

[3] In order for these provisions to take effect, the FDIC as receiver, must comply with notice requirements set forth in 12 U.S.C. 1821(d)(3)(B) and (D).

omission of [a failed institution] or the Corporation as a receiver' and, therefore, are subject to FIRREA's jurisdictional bar."  Id. at 601, citing 12 U.S.C. 1821(d)(13)(D); *Jackson v. F.D.I.C.* (Feb. 19, 2010), E.D. Mich. No. 09-10991.  See, also, *IndyMac Bank, F.S.B. v. MacPherson* (E.D.N.Y. 2009), 672 F.Supp.2d 313, 316.

{¶ 12} The present case is factually similar to *Shirk*.  In both instances, parties asserted claims against a failed financial institution or its successor after the FDIC had been appointed receiver alleging improprieties in the origination of a home loan.  The conclusion of the court in *Shirk* is equally applicable to the present case and is dictated by the need of the FDIC "to dispose of the bulk of claims against failed financial institutions expeditiously and fairly."  H.R. Rep. No. 54(I), 101st Cong., 1st Sess. 419 (1989), reprinted in 1989 U.S.C.C.A.N. 86, 215.  Congress has established a claims process for the orderly administration of the liquidation of the assets of failed banks and has determined that those asserting claims against those institutions shall go through a claims process before seeking judicial intervention.[4]  This process is mandatory in the present case, and the trial court is without jurisdiction to address Macho's claims against WaMu.

**B.  Notice**

---

[4] Some federal courts recognize a distinction between cases filed before a receiver is appointed and those filed after the FDIC has been appointed receiver.  See, e.g., *Marquis v. F.D.I.C.* (C.A.1, 1992), 965 F.2d 1148, 1152-53.  In the latter cases, these courts have held that suit can be maintained or stayed pending exhaustion of the claims process.  But, see, *MacPherson*, supra, at 317-318 (holding that federal courts do not retain subject matter jurisdiction once a receiver is appointed pursuant to FIRREA).

{¶ 13} Macho attempts to get around these jurisdictional hurdles by claiming she did not receive notice of the appointment of the FDIC, and therefore, the provisions of FIRREA do not apply.

{¶ 14} FIRREA has strict notice requirements in 12 U.S.C. 1821(d)(3)(B) to preserve the due process rights of creditors of and those with claims against institutions where the FDIC has been appointed receiver. Accordingly, the FDIC uses a bank's records to notify all listed creditors on its books. 12 U.S.C. 1821(d)(3)(C). Some claims, such as the one at issue here, would not be listed in such records as WaMu, or the FDIC was not notified about the claim until Macho filed her cross-claim in 2009.[5] However, pursuant to 12 U.S.C. 1821(d)(3)(B), the FDIC published notice of its appointment as receiver in the Seattle Times, a publication circulated in WaMu's principle place of business, and a national publication, the Wall Street Journal. Additionally, after receiving notice of Macho's claims, the FDIC alleges that it sent her notice of the mandatory claims process.

{¶ 15} The Southern District Court of Ohio has determined that a party could not escape the claims process by arguing a lack of notice when the FDIC published its appointment in the same fashion and sent notice of the claims process after it learned of the claim following the filing of suit. *White v. Chase Bank USA, NA* (Sep. 28, 2010), S.D.Ohio No. 3:10CV021. The Northern District of Ohio has held similarly, finding the provisions of FIRREA applied to claimants who were unknown creditors when notice by

---

[5] The FDIC argues that it was not properly notified at that time either because the complaint was not served upon it, but upon Chase bank addressed to WaMu.

publication in the same manner was accomplished by the FDIC. *Brandow v. F.D.I.C.* (Dec. 22, 2008), N.D.Ohio 2008 No. 1:08-CV-02771.

{¶ 16} In the present case, the FDIC accomplished notice by publication in the Seattle Times and the Wall Street Journal. Further, the FDIC sent a notice of the administrative claims procedure to Macho on July 16, 2010, as stated in its July 23, 2010 reply to Macho's opposition to its motion to dismiss.

{¶ 17} Here, as in *Shirk*, Macho argues that she should not be made to exhaust administrative remedies when she did not receive proper notice. The *Shirk* court held that even if proper notice was not received, "Congress did not intend for the FDIC to lose jurisdiction based on its failure to mail a takeover notice as FIRREA itself delineates the parameters within which claimants are exempt from strict compliance with administrative claims process. Specifically, FIRREA provides the receiver discretion to allow late-filed claims if the claimant did not receive notice of the appointment of the receiver * * *. Thus, even if the Shirks failed to receive notice of the FDIC's takeover of [WaMu], they were still not relieved of their obligation to follow FIRREA's administrative claim process." (Internal citations omitted.) Id. at 603-604.

{¶ 18} Addressing a claim unknown to the FDIC while it was appointed receiver, similar to the claim here, the *Shirk* court found, "'common sense dictates that actual notice cannot be given to those with inchoate claims of lender malpractice.' *F.D.I.C. v. James J. Madden, Inc.*, 847 F.Supp. 374, 375 (D.Md.1994). At the time of the FDIC takeover of [WaMu], the Shirks had not filed any claims against [WaMu]. Therefore, any potential claim they may have had at that time was inchoate and publication notice

was sufficient under the circumstances. Id. Accordingly, a lack of actual notice does not relieve the Shirks from exhausting FIRREA's administrate remedies and the jurisdictional bar erected by FIRREA applies to the Shirks' claims attributable to the acts or omissions of [WaMu] and its agents." Id. at 604.

{¶ 19} Based on this logic and law, Macho's notice argument in not persuasive.

## C. Constitutionality of the FDIC

{¶ 20} Macho next asserts that FIRREA, and the very existence of the FDIC, is unconstitutional — alleging that Congress does not have the power to create such "quasi-governmental" entities. Damaging to Macho's argument is the lack of any supporting case law on this point. The only support advanced is that Article I, Section 8 of the United States Constitution specifies Congress's powers and does not give it the right to establish such entities. However, the Necessary and Proper Clause of the Constitution[6] bestows the right "[t]o make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or officer thereof." The Commerce Clause[7] also provides authority to regulate commerce "among the several States," including the creation of a nationwide banking system and related agencies for its operation and preservation. Clause 3, Section 8, Article I, United States Constitution. See *Weir v. U.S.* (C.A.7, 1937), 92 F.2d 634, 636.

---

[6] Clause 18, Section 8, Article 1, United States Constitution.

[7] Clause 3, Section 8, Article 1, United States Constitution.

{¶ 21} Further, federal courts have upheld challenges to FIRREA's provisions, including the exhaustion of administrative remedies embodied in 12 U.S.C. 1821(d). *Rosa v. Resolution Trust Corp.* (C.A.3, 1991), 938 F.2d 383; *Bueford v. Resolution Trust Corp.* (C.A.8, 1993), 991 F.2d 481; *Glenborough New Mexico Assoc. v. Resolution Trust Corp.* (D.C.N.M. 1992), 802 F.Supp. 387; *F.D.I.C. v. Updike Bros., Inc.* (D.C.Wyo. 1993), 814 F.Supp. 1035. But, see, *Wilson v. F.D.I.C.* (E.D.N.Y. 1993), 827 F.Supp. 120 (holding that where an action is instituted *before* the FDIC is appointed receiver, a court retains jurisdiction over the action).

{¶ 22} Congress has the power to create governmental corporations to help oversee the operation of a nationwide banking system under both the Commerce Clause and the Necessary and Proper Clause of the Constitution.

### D. Removal

{¶ 23} Macho also asserts that the trial court should have removed the case to one of the federal district courts, citing 12 U.S.C. 1819(b)(2). This statute gives the FDIC the power to remove any case where it is a party to federal court.[8] However, removal would not be appropriate here where Macho had not exhausted her administrative remedies for her claims against the FDIC. The trial court lacked subject matter jurisdiction because FIRREA requires Macho to go through the FDIC claims process and

---

[8] 12 U.S.C. 1819(b)(2)(B) states: "Except as provided in subparagraph (D), the [FDIC] may, without bond or security, remove any action, suit, or proceeding from a State court to the appropriate United States district court before the end of the 90-day period beginning on the date the action, suit, or proceeding is filed against the Corporation or the Corporation is substituted as a party."

bestows exclusive jurisdiction upon two federal courts, and subsequent case law has crafted only very narrow exceptions.

{¶ 24} The FDIC argues that judicial review is precluded by 12 U.S.C. 1821(d)(13). This statute appears to prohibit judicial review of the decisions of the FDIC. However, the federal district court for this jurisdiction has reviewed the provisions of FIRREA related to the claims of uninsured depositors against a successor bank after the assets of a failed institution were transferred under the receivership of the FDIC and found that 12 U.S.C. 1821(d)(13)'s prohibition of judicial review is actually an exhaustion of claims requirement necessary before judicial review may occur. *Village of Oakwood v. State Bank & Trust Co.* (N.D.Ohio 2007), 519 F.Supp.2d 730, 737-738. This view was affirmed by the Sixth Circuit. *Village of Oakwood v. State Bank & Trust Co.* (C.A.6, 2008), 539 F.3d 373.

{¶ 25} Macho has cited no case law, statute, or regulation that requires the FDIC to seek removal rather than dismissal. While judicial review has been established by federal courts in Ohio and other jurisdictions, the FDIC is not required to seek removal rather than dismissal. Therefore, Macho's arguments on this issue are unpersuasive.

### E. Jurisdictional Limitations in FIRREA

{¶ 26} Macho also argues that FIRREA's jurisdictional limitation is unconstitutional where it requires judicial review of any FDIC determination to occur only in the federal district court in Washington D.C. or the district court located in WaMu's principle place of business — Seattle, Washington. However, in a post-receivership case filed concurrently in two federal jurisdictions, the Washington

D.C. district court found "the District of Maryland would not have had subject matter jurisdiction over plaintiff's case. Instead, under FIRREA, only this Court or the district court in the district where [WaMu's] principal place of business is located would have jurisdiction over plaintiff's claims." *Poku v. F.D.I.C.* (D.C.D.C. 2010), 752 F.Supp.2d 23, 27-28, citing *Lloyd v. F.D.I.C.* (C.A.1, 1994), 22 F.3d 335, 337. The *Poku* court found this provision constitutional, and Macho has failed to point to other applicable cases holding the opposite.

{¶ 27} Macho takes issue with requiring her to seek redress of her claims in a district court far from her home. She claims that a minimum contacts analysis, as set forth in *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, must be applied to her under the Due Process Clause of the Fifth Amendment as a cross-claim plaintiff to find that she does not have minimum contacts with these jurisdictions and cannot be forced to sue the FDIC there.

{¶ 28} Ohio and Federal laws require a plaintiff to bring suit in jurisdictions where they may not have any contacts. For example, Civ.R. 3(B)(1) specifies that proper venue lies, among other places, "in the county where the defendant resides." This gives no consideration to the contacts the plaintiff may have to this forum.[9] See, also, 28 U.S.C. 1391. The Supreme Court has also upheld contract provisions that require plaintiffs to sue in certain fora even where they are complete strangers. See *Carnival Cruise Lines, Inc. v. Shute* (1991), 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622.

---

[9] Civ.R. 4.3 does require a due process analysis, but only for an out-of-state *defendant.*

{¶ 29} Further, Macho bears the burden of demonstrating that the statute in question is unconstitutional. "When no fundamental right is implicated or suspect classification affected, the person complaining of the due process violation must establish that the legislature acted in an arbitrary and irrational fashion." *Feigel v. F.D.I.C.* (S.D.Cal. 1996), 935 F.Supp. 1090, 1100, citing *United States R.R. Retirement Bd. v. Fritz* (1980), 449 U.S. 166, 174–75, 101 S.Ct. 453, 66 L.Ed.2d 368; *Usery v. Turner Elkhorn Mining Co.* (1976), 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752.

{¶ 30} Macho has not carried that burden. The only case cited by her in furtherance of the argument that a minimum contacts analysis applies to her as a plaintiff is *Republic of Argentina v. Weltover, Inc.* (1992), 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394. In that case, the Supreme Court analyzed the minimum contacts a defendant, the government of Argentina, had with the New York federal court where the plaintiffs filed suit. At no point did the court engage in an analysis of the plaintiffs' contacts with that forum.

{¶ 31} Finally, Macho argues that this is a foreclosure action that must be brought in Cuyahoga county, the location of the subject property. BofA's complaint against Macho does seek foreclosure, but Macho's claims against WaMu do not. She seeks to hold WaMu and others responsible for alleged wrongdoing in the origination of her mortgage. Her claims are not for foreclosure and, but for the intervention of the Office of Thrift Supervision and its appointment of the FDIC as receiver for WaMu, could be brought in any jurisdiction where WaMu had sufficient contacts. However, FIRREA

significantly restricts Macho's choice and requires her to first submit her claims to the FDIC.

{¶ 32} This is not to say that Macho is entirely prevented from asserting certain defenses against BofA in its foreclosure actions against her. She may still assert fraud defenses against BofA through assignee liability under Ohio law. See *Citizens Fed. Bank, F.S.B. v. Brickler* (1996), 114 Ohio App.3d 401, 410, 683 N.E.2d 358 ("[T]he assignee of a contract takes that contract with all rights of the assignor and subject to all defenses that the obligor may have had against the assignor."); R.C. 1303.35(A)(1)(c) (fraud is a valid defense even against a holder in due course[10]). Therefore, Macho is not prevented from using WaMu's conduct as a defense against BofA's claims against her, but she is required to follow the FDIC claims process to assert causes of action against WaMu. See *MacPherson* at 316; *JP Morgan Chase Bank Nat. Bank v. McPhaden* (Sep. 14, 2010), Conn.Super. No. FSTCV095009848S.

## II. Conclusion

{¶ 33} The trial court did not err in finding that it did not have subject matter jurisdiction to hear Macho's claims against the FDIC as receiver for WaMu. FIRREA established a mandatory process for those with claims against a failed financial institution over which the FDIC is appointed receiver. Macho is required to engage in this process,

---

[10] A holder in due course is defined as one who takes an "instrument when issued or negotiated to the holder [that] does not bear evidence of forgery or alteration that is so apparent, or is not otherwise so irregular or incomplete as to call into question its authenticity; [and:] (a) For value; (b) In good faith; (c) Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series; (d) Without notice that the instrument contains an unauthorized signature or has been altered; * * *." R.C. 1303.32.

and the provisions of FIRREA specifically limit the jurisdictions that may review such claims. This determination renders moot the FDIC's claim that the trial court erred by not finding that it also lacked personal jurisdiction, and it will not be addressed.

Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., PRESIDING JUDGE

JAMES J. SWEENEY, J., and
KATHLEEN ANN KEOUGH, J., CONCUR